### State of North Dakota *vs.* Simon Klectzen.

Opinion filed April 26, 1899.

**Occupation Tax—Peddlers License.**

An act of the Sixth legislative assembly, Ch. 118, Laws 1899, entitled "An act taxing the occupation of hawking and peddling, and regulating the licensing of persons engaged in such occupations," construed, and *held*, to be a measure intended to produce revenue by taxing the occupation of peddling; and *held*, further, that the same was also intended as a police measure to regulate such occupation.

**Constitutional Restriction.**

Said statute nowhere states or indicates the objects or purposes of the tax, nor does it declare how the revenue to be derived thereunder is to be applied. Accordingly, *held*, that the act is repugnant to the provisions of section 175 of the state constitution, and therefore void.

**Police Power.**

*Held,* further, that it cannot be sustained as a measure of police regulation after the revenue features of the act are eliminated as unconstitutional.

Appeal from District Court, Grand Forks County; *Fisk, J.*

Information against Simon Klectzen for peddling without a license. From a judgment sustaining a demurrer to the information, the state appeals.

Affirmed.

*Ledru Guthrie,* for appellant.

The police power of the state can only be exercised by legislative

enactment. It rests solely in legislative discretion to determine when the public welfare or safety requires its exercise. A statute regulating trade, when questioned in a judicial tribunal, cannot be made to depend for its validity upon the motives that may be supposed to have influenced the legislature. Tiedeman's Lim. Police Power, § 2; *Lakeview* v. *Rose Hill Cemetery Co.,* 70 Ill. 192; *Toledo Ry. Co.* v. *Jacksonville,* 67 Ill. 37; S. C. 16 Am. Rep. 611; *Munn* v. *Illinois,* 94 U. S. 113; 17 L. Ed. 385. The presumption is that the license fee prescribed by the act is a reasonable one, unless the contrary plainly appears. Cooley's Tax'n, 40, 410; Dillon Mun. Corp. (3d Ed.) § 358; *Ash* v. *People,* 11 Mich. 347; In re Wan Yin, 27 Fed. Rep. 701. The law may be upheld as a tax. *State* v. *Wordin,* 56 Conn. 226; *Northwestern F. Co.* v. *Hyde Park,* 97 U. S. 659.

*Bosard & Bosard,* for respondent.

The license fee charged is greatly in excess of the cost of issuing the license, and cannot be sustained as a police regulation. *State* v. *O'Connor,* 5 N. D. 629; *State* v. *Glavin,* 34 Atl. 708; *City* v. *Spiegel,* 75 Mo. 146; *Benson* v. *City,* 33 N. J. L. 380; *North Hudson Ry. Co.* v. *City,* 41 N. J. L. 71; *Muhlenbrinck* v. *Commissioners,* 42 N. J. L. 364; *Clark* v. *New Brunswick,* 43 N. J. L. 175; *Mayor* v. *Second Ave. Ry. Co.,* 32 N. Y. 261; *State* v. *Moore,* 18 S. E. Rep. 342; *Chaddock* v. *Day,* 4 L. R. A. 809; *Youngblood* v. *Sexton,* 32 Mich. 419; *Chilvers* v. *Peo.* 11 Mich. 43; *Littlefield* v. *State,* 28 L. R. A. 588; *Willis* v. *Standard Oil Co.,* 52 N. W. Rep. 652; *City* v. *Nodine,* 26 Hun. 512; *State* v. *Wagoner,* 69 Minn. 206, 38 L. R. A. 677.

*Templeton & Rex,* for respondent.

Whatever the power of the legislature may be in regard to raising revenue it cannot under the guise of a license impose a prohibitory or unreasonable fee on the business of peddling. *Chaddock* v. *Day,* 75 Mich. 527, 42 N. W. Rep. 977; *City* v. *New Haven Water Co.,* 44 Conn. 105; *State* v. *Moore,* 18 S. E. Rep. 342. Peddling is not inherently harmful, though an appropriate subject of police regulation. *State* v. *Wagoner,* 69 Minn. 206. Such regulation cannot be carried to the point of indirect prohibition. Const. N. D. Sec. 1; *Butchers' Union S. H. Co.* v. *Crescent, etc., Co.,* 111 U. S. 746; Tiedeman Lim. Pol. Power, 290. The legislature cannot enact an occupation tax. Sec. 176 Const. Where the constitution specifically mentions occupations which may be taxed the right to tax others is denied. *Banta* v. *Chicago,* 50 N. E. Rep. 233-237. The matter of licensing peddlers is provided for by the constitutions of Nebraska, Virginia and Massachusetts. *City* v. *Ins. Co.,* 41 N. W. Rep. 140; *City* v. *Norfolk,* 28 S. E. Rep. 959; *Connecticut Mut. Ins. Co.* v. *Com.,* 133 Mass. 161. A similar constitutional limitation to our own is found in Minnesota. Const. Minn. Art. ix, § 1. It has been twice construed. *Willis* v. *Stand-*

*ard Oil Co.,* 50 Minn. 290, 52 N. W. Rep. 652; *Minces* v. *Schoenig,* 75 N. W. Rep. 711. The law violates section 175 Const. *Pittsburg C. & St. L. Ry. Co.* v. *State,* 49 Ohio St. 189, 30 N. E. Rep. 435.

WALLIN, J. Upon the record in this case, the sole question which is presented for the decision of this Court is whether a certain statute is a constitutional and valid enactment. The statute in question was enacted at the late session of the legislative assembly of this state, and is entitled as follows: "An act taxing the occupation of hawking and peddling, and regulating the licensing of persons engaged in such occupation." The statute contains seven sections, the several provisions of which may be summarized as follows: Section 1 forbids peddling in any county in this state without first obtaining a license so to do from the county auditor. Section 2 requires persons desiring a license to peddle in any county to make a written application to the auditor of such county for a license, and to state "in what manner the applicant desires to travel as a peddler, whether on foot, or with one or more horses or other beasts of burden." Section 3 is as follows: "Each applicant, before he shall be entitled to such license, shall pay into the county treasury of the county where such application is made, the following sums respectively as and for the taxes due from him on account of the pursuit of the occupation of peddling. to-wit: If for a license to travel on foot the sum of $25; if for a license to travel and carry his goods with a single horse, or other beast carrying or drawing a burden, the sum of $100; if for a license to travel with a vehicle or carriage drawn by two or more horses, or other animals, the sum of $150. Said license shall authorize the holder thereof to pursue within said county the business of hawking and peddling in the manner set forth in said license for the period of one year from the date of its issue, and no longer." Section 4 requires the auditor, upon filing a written application for such license, together with the treasurer's receipt for the proper fee, to grant a license to peddle in such county for the period of one year, and for no other or shorter period. Section 5 requires the auditor to make a certain record of the transaction. Section 6 imposes criminal penalties for peddling in any county without such license, and the same penalties are prescribed for the offense of refusing, upon request, to produce such license for examination. Section 7 declares that "nothing contained in this article shall be so construed as to impair, interfere with or take away any existing rights or authority of incorporated cities, towns and villages to license and regulate peddlers within their incorporated limits."

Counsel contend that this statute is unconstitutional as a taxing measure, in this: that it violates section 176 of the state constitution, which provides that "laws shall be passed taxing by uniform rule all property according to its true value in money;" and in support of this point counsel cite the case of *Willis* v. *Oil Co.* (Minn.) 52

N. W. Rep. 652; also, from the same state, the case of *Minces* v. *Shoenig*, 75 N. W. Rep. 711. In both of these cases the Court was considering a provision of the constitution of the State of Minnesota which is practically the same as section 176 of the constitution of North Dakota. The first case cited arose under a statute which authorized an inspection of illuminating oils, and required that certain inspection fees should be paid by the owner for inspecting the oil. The Court upheld this statute as a police regulation, and stated that the law could not be sustained as a taxing measure, because it would run counter to the provision of the constitution of that state "requiring taxes to be as nearly equal as may be and to be levied on a cash valuation." Const. Art. 9, § 1. The fees for inspecting the oil, if regarded as a tax upon the oil, would be a tax which would not be uniform, and one also not based upon the value of the property. In the other Minnesota case (a city ordinance requiring auctioneers to pay a license fee for the privilege of selling certain classes of goods, and in addition to pay a per cent. upon the gross sales of such goods) the Court said, in effect, that the requirement to pay a per cent. on the sales was a tax upon the property sold, and was void as a tax, because it was not uniform, and was not based upon any cash valuation; but the other feature of the ordinance was sustained. We regard neither of these cases as being in point, because the statute under consideration nowhere attempts to lay a tax upon property, and from this it follows that constitutional restrictions upon legislation imposing taxes upon property are inapplicable to the statute in question. In our judgment, the act under consideration, in so far as it may be called a tax law, is an occupation tax law, framed to derive revenue from the occupation of peddling, and hence the same is not restricted by the constitutional requirement of valuation and of uniformity. Cooley, Tax'n, 570; 25 Am. & Eng. Enc. Law, p. 480, and notes 2, 3. It is our opinion that this law was enacted to effect a twofold purpose: It seems to be designed both as a revenue measure, and as a means of regulating the occupation of peddling; and in this double aspect the statute is referable both to the police power inherent in the state, and the authority to impose taxes. It is true that many cases can be found holding that subordinate political bodies, which have no original and inherent power of taxation, are without authority to tax an occupation under a charter delegating the right to regulate only; but with the sovereign state, which possesses plenary power, unless expressly restricted by organic law, both to tax and to regulate, there is no such limitation of authority. Hence it is that laws are sometimes passed to accomplish the double purpose of regulation and revenue. See *Kitson* v. *Mayor, etc.*, 26 Mich. 325; Cooley, Tax'n (2d Ed.) pp. 570, 597. A license measure may include a taxing measure, or it may not. If its chief purpose is clearly to regulate, and nothing else, it then falls within the

police power. In such cases the exaction must not be any greater than is necessary to effect the primary object in view, viz: regulation. *Mays* v. *City of Cincinnati*, 1 Ohio St. 268. This rule is well established; but the matter of regulation may embrace more than a mere license fee, and include expenses which are incidental and indirect as well as those clearly growing out of the business licensed. See the Minnesota cases above cited. And in the case of *Minces* v. *Shoenig*, supra, the Court uses the following significant language: "The very fact that a license is required tends to exclude dishonest or otherwise unfit persons from conducting such sales." This is equivalent to holding that the exaction of a license fee is in itself a police regulation, and we think that such fee might be very efficient as a police regulation, under this statute, as tending to diminish the number of persons who would engage in the business of peddling and hawking within the state. It is manifest that one of the purposes of the statute is to regulate the business of peddling. The act grants the privilege to exercise the calling of a peddler, upon certain conditions, and withholds the privilege from all who fail to comply with such conditions. In this aspect, it is a measure of regulation. See 25 Am. & Eng. Enc. Law, p. 15, and note 1; Cooley, Tax'n, p. 573. Moreover, as has been seen, there are certain clearly regulative features embraced in the act. The exaction of a license is, in our judgment, designed as a regulation, and the requirement that the peddler shall, on demand, produce his license, is also a regulative feature; and, as has been seen, the payment of a fee, especially as in this case, where the same is considerable in amount, would certainly tend to diminish the number of those engaging in the business, and consequently tend, in a degree, to restrict and regulate the business.

Whether the statute is also designed in part as a revenue producing measure is perhaps a question of greater difficulty, but we are inclined to hold that it was so designed. In the first place, it may be said, as a matter of common knowledge, that the occupation of peddling in this state is carried on by a class of transients and strangers, who usually stay in one community but a few days, and rarely, if ever, remain in any county for the period of one full year. In view of this well-known custom, it would seem that a license for a much shorter period than a year—say for a week or a month—would be sufficiently long to accomplish all purposes of mere police regulation. This law, however, will permit no license to be issued for a shorter period than 12 months, and from this we think it fair to infer that the matter of revenue was a prominent consideration in passing the law. But the terms of the act lead to the same conclusion. Section 3, above set out, requires that the applicant "shall pay into the county treasury of the county where such application is made the following sums respectively, as and for the taxes due from him on account of the pursuit of the occupation of peddling." This explicit declaration hardly leaves room for doubt that the idea of revenue by taxation was prominently before the lawmaker in en-

acting this statute. But, if any doubt could arise on the point, a reference to the title of the act will tend to dispel such doubt. The title unmistakably shows the intention to tax as well as to regulate. We do not feel at liberty to override the express language of the law, as it would be necessary to do if we construed the same as a mere police regulation, to the exclusion of any idea of revenue.

This brings us to the decisive question in the case. Counsel for the defendant contends that this statute is enacted in violation of the provisions of section 175 of the state constitution, which reads as follows: "No tax shall be levied except in pursuance of law and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied." As we have said, the act under consideration is designed in part as a tax law; and as such, therefore, it must be construed, in so far as it is a revenue producing measure. An examination of the law reveals the fact that it nowhere states the object of the tax which the law exacts from the peddler. From the terms of the act, it cannot be ascertained how the funds to be derived from it are to be applied, or to what objects or purposes the same are to be devoted. In this we think the law wholly fails to conform to the requirements of the constitution. For this reason we shall hold that it is void, and never took effect as a law. It is obvious that it cannot stand as a mere measure of police regulation, if the various sums named in it cannot be exacted of the applicant for a license. By the terms of the act, the license cannot issue until the tax is paid. It is true that section 3 of the statute requires the license tax to be paid into the county treasury. But this, in our opinion, falls short of indicating the object of the tax. All taxes, whether state, county, city, or school, are paid into the county treasury, because, under the law, the treasurer of the county is the tax collector of all classes of taxes; but the disposition to be made of the proceeds of taxes when collected depends wholly upon the terms of the law under which each is levied and collected. In this respect the statute in question is wholly silent. The provisions of section 175 of the state constitution are clear and unambiguous, and the same are mandatory upon the legislature, and hence we are compelled to hold that the statute is repugnant to the constitution. The same conclusion has been reached by other courts under similar constitutional provisions. Section 175 is a literal reproduction of section 5 of article 12 of the constitution of the state of Ohio. See *Pittsburg, C. & St. L. Ry Co.* v. *State,* 49 Ohio St. 189 (opinion, 198), 30 N. E. Rep. 436. In the case cited the Court held that a certain statute, which, as appeared, was enacted as a revenue measure by the legislature of Ohio, and which required that the revenue derived under it should be paid into the state treasury, was unconstitutional because it omitted to declare the object or purpose of the tax. This case is exactly in point here. See, also, to the same effect, *Westinghausen* v. *People,* 44 Mich. 265, 6 N. W. Rep. 641. In the case last cited the Court sustained a law which declared that a tax should be placed in the contingent fund, as

being a sufficient compliance with the constitution of Michigan, but the statute we are construing contains no similar provision as to the disposition of the funds to be derived under it. This statute, as has been seen, refers to no fund. The judgment of the District Court will be affirmed. All the judges concurring.