STATE OF NORTH DAKOTA, EX REL. HENRY J. LINDE, Attorney General, and Henry Amerland, Relator, v. FRANK E. PACKARD, George E. Wallace, H. H. Steele, State Tax Commission of the State of North Dakota, and as members of Such State Tax Commission, H. H. Kennedy, Robert B. Boyd, Henry Heath, Thomas C. Hockridge, William H. Lakey, County Commissioners of the County of Cass, and Addison Leech, County Auditor of the County of Cass, and as such auditor of the County of Cass.

(155 N. W. 666.)

Action to restrain the Tax Commission from enforcing chapter 255, Session Laws of 1915.

**Tax Commission — action to restrain — Publici juris — state — sovereignty of — multiplicity of suits — writ of prohibition — original — private suitor — upon his relation.**

1. Following State ex rel. Shaw v. Harmon, 23 N. D. 513, it is held that the question here presented is *publici juris*, directly affects the sovereignty of the state, will prevent a multiplicity of suits, is timely brought, and, therefore, this court will issue its original prerogative writ of prohibition upon the relation of a private suitor.

**Statutes — Constitution — in contravention of.**

2. Chapter 255, Session Laws of 1915, is in contravention of § 175 of the State Constitution.

Opinion filed December 10, 1915.

Original writ of prohibition.

Writ issued.

*Lawrence & Murphy,* for plaintiff.

"The power to raise revenue by taxation is a necessary attribute of sovereignty which may be exercised by the legislature, subject only

Note.—For a review of the authorities on the question of prohibition against proceeding under unconstitutional statute, see note in 1 L.R.A. (N.S.) 843, and on the question as to when writ of prohibition lies generally, see notes in 12 Am. Dec. 604; 18 Am. Dec. 238; and 111 Am. St. Rep. 929.

to the restrictions imposed by the Federal or state Constitution." Re: Lipschitz, 14 N. D. 622, 95 N. W. 157.

The act in question provides a fixed and arbitrary rate of taxation upon one class and subject of property without reference to the amount of revenue necessary to be derived from the citizens of the state for public purposes, and it is violation of the Constitution. State Const. §§ 174, 179.

It is a method of taxation that amounts to discrimination. Railroad & Teleph. Cos. v. Board of Equalizers, 85 Fed. 317; 37 Cyc. 727, 728.

Taxes are burdens and charges imposed by the legislature upon persons and property to raise money for public purposes. 37 Cyc. 706; Carondelet use of Reuter v. Picot, 38 Mo. 125.

The power of a legislature to levy or to authorize the levy of a tax, and to create or authorize the creation of a public debt to be paid by taxation, is limited to its exercise for a public purpose. Dodge v. Mission Twp. 54 L.R.A. 242, 46 C. C. A. 661, 107 Fed. 827.

The decision of the question whether a tax or a public debt is for a public or private purpose is not a legislative, but a judicial, function. A legislature cannot make a private purpose a public purpose by its mere fiat.

"It is the policy of the law to raise taxes no faster than they are likely to be needed," and while all reasonable presumptions may be made in favor of the necessities of a new region, no presumption can stand, when overthrown by facts. Michigan Land & Iron Co. v. L'Anse Twp. 63 Mich. 700, 30 N. W. 331.

An ordinance purporting to make a permanent rate for manufacturers, merchants, banks, and trust companies, based on income, licenses, and franchises, which shall be unaffected by the fact that the rate on other property, on an ad valorem basis, may go up or down as the years go by, is void. George Schuster & Co. v. Louisville, 124 Ky. 189, 89 S. W. 689.

The Constitution intends only that a sufficient amount of taxes shall be levied and collected each year to defray the estimated expenses of such year. State ex rel. Garrett v. Froehlich, 118 Wis. 129, 61 L.R.A. 345, 99 Am. St. Rep. 985, 94 N. W. 50.

"The plan embodied in the Constitution contemplates confining the

object of the state appropriations and taxation as near to the people as is practicable." State ex rel. Owen v. Donald, 160 Wis. 21, 151 N. W. 333; Warden v. Fond du Lac County, 14 Wis. 618; Dalrymple v. Milwaukee, 53 Wis. 179, 10 N. W. 141; Chicago & N. W. R. Co. v. State, 128 Wis. 653, 108 N. W. 557; Cooley, Taxn. 3d ed. 22–24.

State burdens must rest on a public, state-wide constitutional purpose. State ex rel. New Richmond v. Davidson, 114 Wis. 563, 58 L.R.A. 739, 88 N. W. 596, 90 N. W. 1067; State ex rel. Jones v. Froehlich, 115 Wis. 32, 58 L.R.A. 757, 95 Am. St. Rep. 894, 91 N. W. 115, 118 Wis. 129, 61 L.R.A. 345, 99 Am. St. Rep. 985, 94 N. W. 50.

The framers of the Constitution clearly intended to limit the raising of revenue by taxation, to the needs and purposes of each year. People ex rel. Thomas v. Scott, 9 Colo. 422, 12 Pac. 608; Re Appropriations, 13 Colo. 316, 22 Pac. 464; People ex rel. State University v. State Board, 20 Colo. 220, 37 Pac. 964; State ex rel. Lenhart v. Hanna, 28 N. D. 583, 149 N. W. 574.

Neither the tax commission nor other taxing power can levy a tax "for no purpose." If a levy of two mills would be sufficient to raise enough revenue for the maintenance of the government, this would be the *limit of power* regardless of the Constitution limitation of 4 mills. State ex rel. Lenhart v. Hanna, 28 N. D. 583, 149 N. W. 575.

"The taxes generally assessed for the state bear a proportion to the amount to be raised, and all taxable property, except that paying specific taxes, is charged with a given and equal per cent upon its assessed value." Pingree v. Auditor General (Pingree v. Dix) 120 Mich. 95, 44 L.R.A. 684, 78 N. W. 1025; Western U. Teleg. Co. v. Omaha, 73 Neb. 527, 103 N. W. 89.

A rule of valuation adopted by those whose duty it is to make assessment, which is designed to operate unequally and to violate a fundamental principle of the Constitution, and when this rule is applied not solely to one individual, but to a large class of individuals or corporations, its enforcement will be restrained. Houston v. Baker, — Tex. Civ. App. —, 178 S. W. 820.

Each man in the state, county, and city is equally interested, in proportion to his property, in maintaining the state, county, and city governments, and in that proportion should bear the burdens equally. Wheeler v. Weightman, — Kan. —, L.R.A.1916A, 846, 149 Pac. 978.

If there is a discrimination against any species of property, imposing an unconstitutional burden thereon, the law cannot be sustained. Railroad & Teleph. Cos. v. Board of Equalizers, 85 Fed. 306.

"The state has no right to take the property of individuals presently and afford them no possible return, merely because the storehouse, being filled, will be opened sometime, depending upon Providence and the majority as to when, for the enrichment or comfort of the people then in being, in which the taxpayer had no special interest which reasonably demands any such sacrifice." State ex rel. Owen v. Donald, 160 Wis. 21, 151 N. W. 366; Madary v. Fresno, 20 Cal. App. 91, 128 Pac. 343.

The act does not state distinctly the object of the same. "No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied." State Const. § 175.

This means an act of the general legislature, unless there is a provision of the Constitution that is self-executing. Southern R. Co. v. Kay, 62 S. C. 28, 39 S. E. 785; State ex rel. Nieman v. Fangbouer; 14 Ohio C. C. 104, 12 Ohio C. D. 801; State v. Klectzen, 8 N. D. 286, 78 N. W. 984, 11 Am. Crim. Rep. 324.

"The law nowhere prescribes the object or use to which the money so paid is to be applied. There seems to be nothing to prevent its being extended for any legitimate county purpose or public improvement. Malin v. Lamoure County, 27 N. D. 140, 50 L.R.A.(N.S.) 997, 145 N. W. 582.

This section of the Constitution is mandatory, and the failure of the act to specify the purpose for which the tax is levied is fatal. Com. v. United States Fidelity & G. Co. 121 Ky. 409, 89 S. W. 251; Chesapeake, O. & S. W. R. Co. v. Com. 129 Ky. 318, 108 S. W. 248, 111 S. W. 334; Southern R. Co. v. Hamblen County, 115 Tenn. 526, 92 S. W. 238; Farmers' & M. Nat. Bank v. School Dist. 35 Okla. 506, 130 Pac. 548.

The act is void and ineffective in that it does not provide for any application, apportionment, or distribution of the revenue raised thereby. State Const. § 175; State v. Klectzen, 8 N. D. 291, 78 N. W. 984, 11 Am. Crim. Rep. 324.

*Frank E. Packard, George E. Wallace,* and *H. H. Steele,* for respondents.

"Money and credits" are included in and covered by the general laws of the state of North Dakota, referring to taxable property, and wholly independent of the provisions of the 1915 law, being chapter 255, are taxable property. The law contemplates that such property shall be listed, assessed, and taxed, and the acts done, looking to such end, have ample authority. Comp. Laws 1913, §§ 2074, 2075, 2077, 2088; State ex rel. Dorgan. v. Fisk, 15 N. D. 229, 107 N. W. 191; State v. Superior Ct. 111 Am. St. Rep. 925, note C, on p. 938.

This action is improvidently instituted. The plaintiff has a plain remedy at law. The remedy by writ of prohibition does not lie. State ex rel. Terminal R. Asso. v. Tracy, 237 Mo. 109, 37 L.R.A.(N.S.) 448, 140 S. W. 888; Shortt, Extr. Legal Rem. 3d ed. ¶ 767, B, § 436; Wilson v. Berkstresser, 45 Mo. 286; 32 Cyc. 602, note 21; State v. Superior Ct. 111 Am. St. Rep. 925, note E, p. 943; State ex rel. Dawson v. St. Louis Ct. of Appeals, 99 Mo. 221, 12 S. W. 662; State ex rel. Kenamore v. Wood, 155 Mo. 455, 48 L.R.A. 596, 56 S. W. 476; 16 Enc. Pl. & Pr. 1094; High, Extr. Legal Rem. 2d ed. ¶¶ 1716, 1752; Wood, Mandamus, 147; Lloyd, Prohibition, 48; State ex rel. Brown v. Klein, 116 Mo. 259, 22 S. W. 693; State ex rel. Hofmann v. Scarritt, 128 Mo. 331, 30 S. W. 1026; State ex rel. Alderson v. Moehlenkamp, 133 Mo. 134, 34 S. W. 468; Wand v. Ryan, 166 Mo. 646, 65 S. W. 1025; Schubach v. McDonald, 179 Mo. 163, 65 L.R.A. 136, 101 Am. St. Rep. 452, 78 S. W. 1020; State ex rel. McNamee v. Stobie, 194 Mo. 14, 92 S. W. 191; Delaney v. Police Ct. 167 Mo. 679, 67 S. W. 592.

Remedy by way of injunction is not available under the facts set forth in the plaintiff's complaint. Frost v. Flick, 1 Dak. 131, 46 N. W. 508; Schaffner v. Young, 10 N. D. 245, 86 N. W. 733; Minneapolis, St. P. & S. Ste. M. R. Co. v. Dickey County, 11 N. D. 112, 90 N. W. 260; Torgrinson v. Norwich School Dist. 14 N. D. 16, 103 N. W. 414; Bismarck Water Supply Co. v. Barnes, 30 N. D. 555, L.R.A. 1916A, 965, 153 N. W. 454; Merchants' State Bank v. McHenry County, 31 N. D. 108, 153 N. W. 386; Cooley, Taxn. 3d ed. p. 772, and the cases in note 2, also pp. 1415, 1445; Clarke v. Ganz, 21 Minn.

32 N. D.—20.

387; Savings & Loan Soc. v. Austin, 46 Cal. 417; 2 Dill. Mun. Corp. 4th ed. § 924; Laird Norton Co. v. Pine County, 72 Minn. 409, 75 N. W. 723; Odlin v. Woodruff, 22 L.R.A. 699, note; Dows v. Chicago, 11 Wall. 109, 20 L. ed. 65, 7 Rose's Notes (U. S.) pp. 403–407; Frost v. Flick, 1 Dak. 131, 46 N. W. 508, and numerous other cases; State R. Tax Cases, 92 U. S. 575, 23 L. ed. 663.

"The case stands upon the naked averment that the law is unconstitutional, and the inspection fee illegal—the remaining averments wholly failing to make a case under any decision of this court for injunctive relief."

The existence of the former law of this state is not denied; that he has property subject to taxation thereunder is also not denied. State ex rel. Kenamore v. Wood, 155 Mo. 425, 48 L.R.A. 601, 56 S. W. 474; 22 Cyc. 885, and note 20; 32 Cyc. 607, and note 46; Re Schumaker, 90 Wis. 488, 63 N. W. 1050; Dows v. Chicago, 11 Wall. 108, 20 L. ed. 65; Shelton v. Platt, 139 U. S. 596, 35 L. ed. 276, 11 Sup. Ct. Rep. 646; Verdin v. St. Louis, 131 Mo. 106, 33 S. W. 480, 36 S. W. 52; 16 Am. & Eng. Enc. Law, 360.

Public policy demands that no needless restrictions be placed upon the securing of the necessary means for conducting the government. Bismarck Water Supply Co. v. Barnes, 30 N. D. 555, L.R.A.1916A, 965, 153 N. W. 454.

The court has no jurisdiction to restrain a co-ordinate branch of the state government. This is true even though the law under which they seek to act is unconstitutional. In a proper action at law, such questions may be properly raised and passed upon. People ex rel. Alexander v. District Ct. 29 Colo. 182, 68 Pac. 242; Frost v. Thomas, 26 Colo. 222, 77 Am. St. Rep. 259, 56 Pac. 899; Walton v. Develing, 61 Ill. 201; Throop, Pub. Off. 842; High, Inj. § 1326; People ex rel. Tucker v. Rucker, 5 Colo. 455; Re Fire & Excise Comrs. 19 Colo. 482, 36 Pac. 234; Gubelle v. Epley, 1 Colo. App. 199, 28 Pac. 89; People ex rel. Engley v. Martin, 19 Colo. 565, 24 L.R.A. 201, 36 Pac. 543; Lewis v. Denver City Waterworks Co. 19 Colo. 236, 41 Am. St. Rep. 248, 34 Pac. 993; People ex rel. Sutherland v. The Governor, 29 Mich. 320, 18 Am. Rep. 89; Story, Eq. Jur. 12th ed. § 955a; State ex rel. Young v. Hall, 135 La. 420, 65 So. 596; Mississippi v. Johnson, 4 Wall. 475, 18 L. ed. 437; Smith v. Myers, 109 Ind. 1, 58 Am. Rep.

375, 9 N. E. 692; Hawkins v. The Governor, 1 Ark. 570, 33 Am. Dec. 346; Thompson v. Canal Fund Comrs. 2 Abb. Pr. 248.

"The courts of this state have no power to restrain by injunction the acts of officers of the law who are proceeding under authority of a law of the state. That such law is unconstitutional forms no ground for granting such injunction." Western R. Co. v. De Graff, 27 Minn. 1, 6 N. W. 341; 2 High, Inj. 2d ed. § 1326; Mississippi v. Johnson, 18 L. ed. 437, note; De Chastellux v. Fairchild, 15 Pa. 18, 53 Am. Dec. 570.

The law in question is not unconstitutional. State ex rel. Winona Motor Co. v. Minnesota Tax Commission, 117 Minn. 159, 134 N. W. 643; Mutual Ben. L. Ins. Co. v. Martin County, 104 Minn. 179, 116 N. W. 572; State v. Farmers' & M. Sav. Bank, 114 Minn. 95, 130 N. W. 445, 851; State ex rel. Hilderbrandt v. Fitzgerald, 117 Minn. 192, 134 N. W. 728.

BURKE, J. Plaintiff brings this action to restrain the State Tax Commission from enforcing the provisions of chapter 255, Sess. Laws 1915. This legislation had its origin in the popular belief that moneys and credits had in the past escaped taxation, but that the owners of said property were morally, if not legally, justified in taking some measure to avoid the payment of a 7 per cent or 8 per cent tax, which necessity doled out to the inhabitants of some of our cities, when the banks and other reputable depositaries would pay but 4 per cent and 5 per cent for the use of said money. It was, therefore, suggested by some of the people who interest themselves in legal reforms that, if a special and lighter rate were imposed upon money and credits, this class of property and the assessor would be able to get better acquainted. The only obstacle that presented itself was the Constitution, which, it seems, favored the theory of taxing all classes of property at the same rate, and contained several provisions inconsistent with this new theory of taxation. The reformers, however, proceeded to meet these obstacles in the very commendable manner of a constitutional amendment, and in the fall of 1914 the voters adopted a concurrent resolution (chapter 103 of the Session Laws of 1913), changing § 176 of the Constitution of North Dakota. After the amendment, our Constitution read as follows: "Taxes shall be uniform upon the same class of property, in-

cluding franchises within the territorial limits of the authority levying the tax, and shall be levied and collected for public purposes only, but the property of the United States and of the state, county and municipal corporations shall be exempt from taxation; and the legislative assembly shall by a general law exempt from taxation property used exclusively for school, religious, cemetery, charitable or other public purposes, and personal property to any amount not exceeding in value $200 for each individual liable to taxation; provided, that all taxes and exemptions in force when this amendment is adopted, shall remain in force, in the same manner and to the same extent until otherwise provided by statute." This section takes the place of old § 176, which provided that laws shall be passed taxing by uniform rule all property according to its true value in money. After the adoption of this amendment, the legislature enacted chapter 255, Sess. Laws 1915, which reads as follows:

"Section 1. Definition. Tax Rate.— 'Money' and 'credits' as the same are defined in § 2074 of the Compiled Laws of 1913, are hereby exempted from taxation other than that imposed by this act and shall hereafter be subject to an annual tax of 2 mills on each dollar of the fair cash value thereof. But nothing in this act shall apply to money or credits belonging to incorporated banks situated in this state.

"Section 2. How Listed.—All 'money' and all 'credits' taxable under this act shall be listed in the manner provided in § 2095 of the Compiled Laws of 1913, but such listing shall be upon a separate blank from that upon which other personal property is listed.

"Section 3. Tax Commission to Prepare Instructions. Form of Return. , Blanks.—The North Dakota Tax Commission shall annually prepare instructions for bringing in the lists required by the preceding section. They shall prepare and distribute through the county auditors to the assessors, a form for the return which the taxpayers are required to make by this act, and this form shall state the rate of taxation and be printed on a separate sheet, and shall be entirely distinct from the forms prepared for the returns of other classes of property. Such forms shall require only aggregate sums of credits and of moneys.

"Section 4. Litigated Taxes.—Any assessment of money and credits heretofore made, the legality of which has been placed in litigation and the collection of the tax thereon has been enjoined and is now

pending in the court may be compromised and settled by payment at the rate of 25 mills on the assessed valuation of such moneys and credits.

"Section 5. Emergency.—Whereas, this act should be effective upon the assessment of taxes for the year 1915, an emergency exists and this law shall go into effect upon its passage and approval."

Acting under this new law the Tax Commission of North Dakota took steps looking to an assessment of the moneys and credits of our taxpayers in general and of our relator, Mr. Amerland, incidentally, whereupon this action was instituted. It is claimed by relator that § 255, Sess. Laws 1915, violates clauses of the Constitution to which no amendments have been made. We will quote briefly from his brief: "The petitioner alleges that the said legislative act violates several of the provisions of the Constitution of the state of North Dakota, all of which said alleged violations are set out in full in said petition. In said petition some ten alleged grounds of invalidity or unconstitutionality are set forth. While we respectfully insist upon the merits of each and every one of such propositions, there are, in our opinion, a limited number of questions which are so conclusive as to the invalidity and unconstitutionality of this law that we shall not discuss all of said ground of invalidity. . . . We, therefore, present for consideration to this court what we contend to be three unquestionable and direct violations of the fundamental law of this state. First, the act in question provides a fixed and arbitrary rate of taxation upon one class and subject of property without reference to the amount of revenue necessary to derive from the citizens of the state for public purposes. Second, the act in question does not state distinctly the object of the same; third, the act in question is void and ineffective in that it does not provide for any application, apportionment, or distribution of the revenues raised thereby." The Tax Commission and other defendants, instead of meeting this constitutional attack, dispute the right of plaintiff to maintain the action and the jurisdiction of this court to entertain the proceedings. This divides the controversy into two essential parts: First, Can the action be maintained? second, Is the act unconstitutional?

(1) The Tax Commission argues that: (a) the remedy of prohibition is not available under the facts disclosed by plaintiff's petition; (b) that the remedy by way of injunction is not available under the facts set

forth in plaintiff's complaint; and (c) that the court has not juris-
diction to restrain a co-ordinate branch of the state government. Under
(a) they urge that the Tax Commission has jurisdiction of the matters
of the taxation of petitioner's moneys and credits, and that the same
is taxable either under this new law or under the old law, and that,
therefore, petitioner has no grievance. We do not believe this argu-
ment sound. Section 8470, Comp. Laws 1913, provides: "The writ
of prohibition is the counterpart of the writ of mandamus. It arrests
the proceedings of any tribunal, corporation, board or person, when
such proceedings are without or in excess of the jurisdiction of such
tribunal, corporation, board or person." While the Tax Commission
may have jurisdiction of the subject of taxation, they are, nevertheless,
governed by the Constitution and the laws of the state, and can only
exercise their powers under legal authority. If the new law, as con-
tended by the relator, is unconstitutional, they have no authority to
act thereunder, and it is not a sufficient answer to say it might have
acted legally by a return to the procedure of the old law. The mere
fact that under the new law moneys and credits are to be taxed but 2
mills, whereas under the old law the tax would have been very much
higher, does not confer any constitutional or legislative powers upon the
Tax Commission, nor should it defeat relator's right to resist an illegal,
though small, assessment. If the Tax Commission, therefore, is acting
outside of its jurisdiction, the writ of prohibition is the proper remedy.
See 32 Cyc. 606; State ex rel. Dorgan v. Fisk, 15 N. D. 219, 107 N.
W. 191; State ex rel. Ladd v. District Ct. 17 N. D. 285, 15 L.R.A.
(N.S.) 331, 115 N. W. 675; Bismarck Water Supply Co. v. Barns,
30 N. D. 555, L.R.A.1916A, 965, 153 N. W. 454; See also notes in
22 L.R.A. 699; 69 Am. Dec. 198; 49 Am. Rep. 287; 23 Am. Rep.
622; 53 Am. Rep. 110; 16 L.R.A.(N.S.) 807; 8 L.R.A.(N.S.) 125;
7 Am. St. Rep. 484; 98 Am. St. Rep. 865; and 105 Am. St. Rep. 122.

Defendants maintain that the complaint itself shows that the relator
has another remedy, to wit, to pay the taxes and sue to recover the
same. Cases cited by them, however, like Merchants' State Bank v.
McHenry County, 31 N. D. 108, 153 N. W. 386, show the law under
which the tax is levied, constitutional.

It is claimed that the court has no jurisdiction to interfere with a co-
ordinate branch of the state government. However, it is not against

any lawful act of the Tax Commission that restraint is sought, but against actions, as alleged, exceeding their powers; therefore, under the allegations of the complaint the Tax Commission are mere trespassers against the rights of the relator. This subject has been so thoroughly covered in the recent case of Bismarck Water Supply Co. v. Barns, that we will not further pursue the same.

Our conclusion generally is that prohibition is the proper remedy, if under the facts of the case relator has any remedy in a court of equity. We are aware that the mere fact that relator is called upon to pay an illegal tax affords no grounds for equitable interference. In addition to his grievance, relator must show to this court other facts sufficient to bring the case within the jurisdiction of a court of equity. The grounds appearing here which we think sufficient to answer this requirement are as follows: The matter is clearly *publici juris*. Every taxpayer of the state of North Dakota may have moneys and credits subject to the demands of this law. The state, every county, township, city, or village is directly interested, thus affecting the sovereignty of the state. Such being the case, this action may prevent a great multiplicity of suits. The action is timely brought by the relator upon his own behalf and upon that of all other persons similarly situated, thus preventing any defense to grow through laches. In cases where the sovereignty of the state is directly involved, this court is vested with large discretion in determining whether, under the particular facts of such case, a showing has been made which appeals to its original powers. The holdings of our court along this line began with: State ex rel. Walker v. McLean County, 11 N. D. 356, 92 N. W. 385; State ex rel. McDonald v. Holmes, 16 N. D. 457, 114 N. W. 367; State ex rel. Steel v. Fabrick, 17 N. D. 532, 117 N. W. 860; State ex rel. Shaw v. Harmon, 23 N. D. 513, 137 N. W. 427; and the later cases from our own court, already cited. See also State ex rel. Owen v. Donald, 160 Wis. 21, 151 N. W. 331.

Our conclusion then is that the matter is of sufficient public importance; directly affects the sovereignty of the state; is calculated to prevent a multiplicity of suits, and the relator is timely in his action. Therefore, this court should exercise its powers and take original jurisdiction of the subject-matter. Further, that prohibition is the proper remedy to invoke these powers.

(2) We now reach the question of the constitutionality of house bill No. 255. The history of this legislation is enlightening, and as it has a vital bearing upon the results of this suit we will take a moment to review it. Chapter 285 of the Minnesota Session Laws of 1911 provided for the taxation of moneys and credits. The Tax Commission of Minnesota attempted to collect a nominal fee from the Winona Motor Company. Resistance being made, the matter reached the supreme court of Minnesota, who handed down a decision, February 9, 1912, upholding said law against the constitutional attack made thereupon. Some person who was, undoubtedly, familiar with the Minnesota legislation and litigation, drafted house bill 331, and presented it to the North Dakota 1915 legislature. A comparison of this bill with the Minnesota law shows that ours was modeled thereafter, and the author, no doubt, hoped that if it became a law three years after the Minnesota court had declared it constitutional, it would stand the tests of the North Dakota courts. As originally drafted, it contained 14 sections; § 5 providing for the listing of the property under oath and inspection; § 6 providing that the list furnished the assessor should be received as true; § 7 providing for action in case of failure of the person assessed to list his moneys and credits; § 8 providing for an estimate and for errors; § 9 providing for the amount assessable and providing for a change of domicil; § 10 providing that the property shall be listed in a separate book; § 11 providing for a review and equalization; § 12 authorizing the auditor to compute the tax and providing for the listing and collection; § 13 providing for the apportionment of the moneys among the various funds; § 14 providing for repeal of all acts in conflict therewith. If the author of the bill was familiar with the Minnesota legislation, there was somebody with influence in the legislature who was equally familiar with § 175 of our state Constitution and the case of State v. Klectzen, 8 N. D. 286, 78 N. W. 984, 11 Am. Crim. Rep. 324. Following the history of said bill, we find at page 785 of senate journal 1915, the following: "Your committee on taxes and tax laws to whom was referred house bill No. 331, a bill for an act relating to the taxation of personal property known as moneys and credits, have had the same under consideration, and recommend that the same be amended as follows:

"In line five, § 1 of the printed bill, strike out the word 'three' and insert in lieu thereof the word 'two.'

"Strike out all of said bill after § 2, and add the following:

"Section 3. Tax Commission to Prepare Instructions. Form or Return Blanks.—The North Dakota Tax Commission shall annually prepare instructions for bringing in the lists required by the preceding section. They shall prepare and distribute through the county auditors to the assessors, a form for the returns which the taxpayers are required to make by this act, and this form shall state the rate of taxation and be printed on a separate sheet, and shall be entirely distinct from the forms prepared for the returns of other classes of property. Such forms shall require only aggregate sums of credits and of moneys.

"Section 4. Litigated Taxes.—Any assessment of money and credits heretofore made, the legality of which has been placed in litigation, and the collection of the tax thereon has been enjoined and is now pending in the court, may be compromised and settled by payment at the rate of taxation as provided in § 1 of this act.

"Section 5. Emergency.—Whereas this act should be effective upon the assessment of taxes for the year 1915, an emergency exists and this law shall go into effect upon its passage and approval. And when so amended recommended the same do pass."

This report was adopted, and upon the very last day of the session the bill was passed in both houses. This is a simple chapter from the history of the bill as disclosed by the public records of which this court can take judicial notice. Section 175 of the state Constitution reads as follows: "No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied." In State v. Kletzen, 8 N. D. 286, 78 N. W. 984, 18 Am. Crim. Rep. 324, and at page 291 of the state report, it is said: "All taxes, whether state, county, city or school, are paid into the county treasury; . . . but the disposition to be made of the proceeds of taxes when collected depends wholly upon the terms of the law under which each is levied and collected. In this respect the statute in question is wholly silent. The provisions of § 175 of the state Constitution are clear and unambiguous, and the same are mandatory upon the legislature and hence we are compelled to hold that the statute is repugnant to the Constitution."

Every word quoted applied with equal force to chapter 255 as mutilated by its enemies. There is no doubt that the author of the amendment was familiar with said decision, and deliberately rendered the bill unconstitutional. Whether he succeeded in settling the lawsuit, which throws its dark shadow over § 4 of the bill, as passed, we do not know.

The facts recited make it plain that the law clearly violated § 175 of the Constitution, and the writ of prohibition must issue.

We might add, in passing, that the attempt to attach an emergency clause to chapter 255, Sess. Laws 1915, was in contravention of the initiative and referendum amendment to the state Constitution, and that said law, even if constitutional, would not have applied to the taxes which were attempted to be collected.