## LESLIE STINSON et al. v. P. O. THORSON et al.

### (158 N. W. 351.)

**School board — Grand Forks Independent School District — erection of high school building — contract for — action to restrain — school funds — diversion of — from one purpose to another — debts — constitutional limit of — teacher's wages fund — transfer of moneys from — to General Fund — permissible.**

Action to restrain the school board of Grand Forks Independent School Dis-

trict from carrying out a contract for the erection of a high school building, because certain funds had been diverted from the purpose for which they had been levied, and that, without such funds, said contract creates a debt in excess of the constitutional limit.

*Held,* that the transfer of funds from the teachers' to the general fund in this case is not prohibited by § 175 of the Constitution of North Dakota.

Opinion filed April 26, 1916. Rehearing denied June 20, 1916.

Appeal from the District Court of Grand Forks County, *Pollock,* J. Reversed.

*McIntyre & Burtness, V. R. Lovell,* and *L. E. Birdzell,* for appellants.

Appellants insist that under our constitution and statute law the school board of the Independent School District of Grand Forks have the right to use money raised and levied for a certain purpose, for other school purposes, and when such money is not needed for the specific purpose for which it was raised, to divert it, and use it for other immediate school purposes, and that money raised for teachers' wages, when not so needed, may be diverted and transferred over into the general fund of the district for general purposes, including the erection of a school building and the use of said fund towards the payment of the bills in connection therewith. Nor is such school board required to specifically levy for as many funds as there are purposes enumerated for which levies may be made. Comp. Laws 1913, §§ 1297, 1298; Const. § 175; State v. Kleetzen, 8 N. D. 291, 78 N. W. 984, 11 Am. Crim. Rep. 324; State ex rel. Reed v. Merriam County, 21 Kan. 436.

The law prescribes the same fiscal regulations for this district as for common and special school districts. Comp. Laws 1913, §§ 1212, 1297, 1298, ¶ 7.

School districts are required to keep only a state tuition fund, a general fund, and a sinking fund, and the Constitution is satisfied when these funds are kept. Comp. Laws 1913; § 1212; Const. § 175.

Section 1298 of the Compiled Laws of 1913 does not define funds, but only provides the form of the levy. 2 Dill. Mun. Corp. 5th ed. ¶ 860; School Dist. v. Western Tube Co. 13 Wyo. 304, 80 Pac. 155; Western Town-Lot Co. v. Lane, 7 S. D. 1, 62 N. W. 982; Dakota County v. Bartlett, 67 Neb. 62, 93 N. W. 192; Thomas Kane & Co. v.

Hughes County, 12 S. D. 438, 81 N. W. 984; Comp. Laws 1913, § 1298; Thomson v. Harris, 88 Hun, 478, 34 N. Y. Supp. 885.

The proceeds of the levy must be used for the prospective needs of the district in contemplation when the levy was made, unless otherwise authorized by law. Comp. Laws, 1913, §§ 1298, 1308; N. D. Const. §§ 130, 174; Cooper v. Wait, 106 Ky. 628, 51 S. W. 161.

Section 175 of our Constitution does not prohibit transfer of unexpended balances for a purpose not in contemplation at the time the tax was levied. Field v. Stroube, 103 Ky. 114, 44 S. W. 363; Whaley v. Com. 110 Ky. 154, 61 S. W. 35; State ex rel. Jackson v. Butler County, 77 Kan. 507, 94 Pac. 1004; Miller v. Merriam, 94 Iowa, 126, 62 N. W. 689; Howard v. Huron, 6 S. D. 180, 26 L.R.A. 498, 60 N. W. 803.

This section is satisfied when the revenue raised for a particular purpose for a given year is employed to meet the obligations of that year. Cooper v. Wait, supra; Fuller v. Heath, 89 Ill. 311; Com. v. Brown, 91 Va. 762, 28 L.R.A. 115, 21 S. E. 357; People ex rel. Burrows v. Orange County, 27 Barb. 575, 17 N. Y. 235; People v. National F. Ins. Co. 27 Hun, 188.

The designation of a fund has no relation to the object of a tax, but is a mere accounting device. Com. v. Brown, 91 Va. 762, 28 L.R.A. 110, 21 S. E. 357; 2 Lewis's Sutherland, Stat. Constr. 2d ed. §§ 443, 448; Conn v. Cass County, 151 Ind. 517, 51 N. E. 1062; Cincinnati v. Connor, 55 Ohio St. 82, 44 N. E. 583; Chalfant v. Edwards, 176 Pa. 67, 34 Atl. 922.

Practical construction of a statute by officers whose duty it is to administer the law is admissible in aid of construction. Garr, S. & Co. v. Sorum, 11 N. D. 174, 90 N. W. 799; 2 Lewis's Sutherland, Stat. Constr. 2d ed. § 474; § 710, 1895 Code with § 710, 1899 Code; Comp. Laws, 1913, §§ 1208, 1212; Bryan v. Board of Education, 7 Okla. 160, 54 Pac. 409; Hickman College v. Colored Common School Dist. 111 Ky. 944, 65 S. W. 20.

The assets of the municipal corporation not specifically required or appropriated to meet anticipated expenditures are available to accomplish any authorized object. Miller v. Merriam, 94 Iowa, 126, 62 N. W. 689; 1 Abbott, Mun. Corp. §§ 146, 411; 3 Abbott, Mun. Corp. § 1071.

Section 1298 of our Compiled Laws is not absolutely mandatory as

to the manner in which taxes are to be levied and accounts kept. It merely conveys authority to levy taxes. It does not prescribe a fiscal system. The purpose for which one annual levy is made is entirely distinct from that for which another annual levy is made. Each one is made to provide revenue to meet obligations of the district for a distinct and separate current year. Cooper v. Wait, 106 Ky. 628, 51 S. W. 161; 2 Dill. Mun. Corp. 5th ed. ¶ 860.

Section 1298 of our 1913 Laws does not rise to the dignity of a mandatory statute, even as applied to the levy of the taxes, much less as applied to the method of accounting. Thomson v. Harris, 88 Hun, 478, 34 N. Y. Supp. 885; School Dist. v. Western Tube Co. 13 Wyo. 304, 80 Pac. 155.

If respondents are correct in their interpretation of this law, then whatever authority is given in the statute to raise and apply money in a certain way or direction, the implication would follow that such moneys would constitute a fund, and a warrant drawn upon this fund would not be payable out of the general fund. This is not the law. Thomas Kane & Co. v. Hughes County, 12 S. D. 438, 81 N. W. 894; Dakota County v. Bartlett, 67 Neb. 62, 93 N. W. 192; Western Town-Lot Co. v. Lane, 7 S. D. 1, 62 N. W. 982.

*Bangs, Netcher, & Hamilton, Murphy & Toner,* and *Bangs & Robbins,* for respondents.

These school districts are agencies created by the state to carry out its educational purposes, and are vested with limited corporate powers. They are a species of public corporation resembling counties, townships, and road districts, and are in no true sense municipal corporations. Sanders v. Independent School Dist. 35 S. D. 48, 150 N. W. 473; People ex rel. Cairo & St. L. R. Co. v. Trustees of Schools, 78 Ill. 136; People ex rel. Biddison, v. Board of Education, 255 Ill. 568, 99 N. E. 659; Heller v. Stremmel, 52 Mo. 309; Thogmartin v. Nevada School Dist. 189 Mo. App. 10, 176 S. W. 473; Madden v. Lancaster County, 12 C. C. A. 569, 27 U. S. App. 528, 65 Fed. 188; Wharton v. School Directors, 42 Pa. 358; Freeland v. Stillman, 49 Kan. 197, 30 Pac. 235.

Aside from bond issues, the revenue of the school district is derived from the following sources: Tax Levied by the Board (§ 1298); State Apportionment (§ 1208); County Apportionment (§ 1224).

The question at issue is whether or not this county apportionment fund is appropriated by §§ 1297 and 1298 to the payment of teachers' salaries, or is it of a floating character, and may it be devoted to building or other purposes, thus augmenting the amounts raised therefor by taxation. If the diversion theory is not adopted, it is clear that this county apportionment fund cannot be diverted to the building fund, or used for building purposes. Comp. Laws, 1913, §§ 1298, 1302; State Const. § 175.

The school board cannot make a levy for one purpose and then divert the funds raised thereby to another and wholly different purpose. Neither can the board raise taxes faster than they are needed for the purposes levied. Comp. Laws 1913, §§ 1297, 1298, 1301 and 1302; Midland Twp. v. Roscommon Twp. 39 Mich. 424; Michigan Land & Iron Co. v. L'Anse Twp. 63 Mich. 700, 30 N. W. 331; Keystone Lumber Co. v. Bayfield, 94 Wis. 491, 69 N. W. 162; Vreeland v. Bayonne, 58 N. J. L. 126, 32 Atl. 68; Allen v. Peoria & B. Valley R. Co. 44 Ill. 85; 2 Cooley, Taxn. 1435.

The very purpose of this restriction is to prevent deception and furnishing money that might by some indirection be used for objects not approved or intended. Westinghausen v. People, 44 Mich. 265; State ex rel. Lima v. Pohling, 1 Ohio C. C. 486, 1 Ohio C. D. 271; State ex rel. Nieman v. Fangbouer, 14 Ohio C. C. 104, 12 Ohio C. D. 801, 7 Ohio Dec. 334.

Every law imposing a tax shall state distinctly the object of the same, to which it shall be applied. Kan. Const. 1855, art. 11, § 3; Northup v. Hoyt, 31 Or. 528, 49 Pac. 754; Bowers v. Neil, 64 Or. 104, 128 Pac. 433; Ark. Const. 1860, § 5, art. 10 adopted the 1858, Kan. and 1851 Ohio section in toto as § 11, art. 16.

The Kansas law has been adopted here, together with its interpretation. N. D. Const. § 175; S. D. Const. § 8, art. 11; Wash. Const. art. 7, § 5; Wyo. Const. Art. 15, § 13; State ex rel. Reed v. Marion County, 21 Kan. 419, Anno. ed. 308; National Bank v. Barber, 24 Kan. 543, Anno. ed. 382; State v. Emporia, 57 Kan. 710, 47 Pac. 833; Smith v. Haney, 73 Kan. 506, 85 Pac. 550.

Wisconsin, without the aid of a constitutional provision, denies the right to divert such funds. Weik v. Wausau, 143 Wis. 645, 128 N. W.

429; Rice v. Milwaukee, 100 Wis. 516, 76 N. W. 341; State ex rel. Board of Education v. Haben, 22 Wis. 660.

The same is true of Minnesota. Mitchell v. St. Paul, 114 Minn. 141, 130 N. W. 66.

Section 1212 has reference to the funds of the Common School Districts which are authorized by § 1222, but such tax is a general tax for all purposes.

This law does not apply to Independent School Districts. Comp. Laws 1913, §§ 1298, 1301 and 1308; Price v. Fargo, 24 N. D. 440, 139 · N. W. 1054.

BURKE, J. Trial *de novo*. The complaint alleges that those defendants who comprised the Board of Education of the Independent School District of the city of Grand Forks have made a contract with the other defendants for the erection of a new high school building; that, under § 183 of the Constitution, and § 1303, Comp. Laws 1913, the total debt limit of said district was 5 per cent of the 1914 assessed valuation of $4,737,845.00, or $236,892.25; that the said district was already bonded in the sum of $175,000; that there were available assets not to exceed $114,916.09; that "by reason of the fact as hereinbefore set forth, the contracts set forth in ¶¶ 8, 9, and 10 hereof are illegal, null, and void, and are without any valid or binding force, and are in excess of the constitutional and statutory limitations upon the debt of said Independent School District." Judgment of the court was asked restraining the defendants from proceeding further under the terms of said contracts. The school board answered admitting the execution of the contracts, but in smaller sums than alleged in the complaint, and alleged that the total cost of said building, complete and fully equipped, will not exceed the sum of $180,000, not more than $160,000 of which will be due or payable until after July 1, 1916; that at the time the said contract was let the defendant board had, and now has, cash on hand, together with the 1915–16 tax levy anticipated and other assets, a sum exceeding the amount of said contracts. In allowing the temporary injunction the trial court filed a memorandum decision from which we quote: "It is but just, at the outset, for me to say that no charge of corruption, intentional wrongdoing, or personal gain was made against any of the defendants. In fact, counsel for plaintiffs stated in open

court that, in so far as they knew, the present board, including the secretary, as well as its predecessors, were men and women of the highest character and of known probity.   That many of the errors complained of, especially as to methods of procedure, have been inherited from the past; that the system in vogue at the present time has been in continuous use for many years.   Notwithstanding these facts, the plaintiffs allege that the method of making levies and of keeping the accounts are and have been illegal and void, and that no contract could be of binding force under the present state of affairs.   The affidavit of Mr. Burchard, secretary of the board, among other things admits the following: 'That the moneys levied by and received by such board have not at any time been kept in a separate and distinct fund, either on the books of the treasurer of said board or in the books kept in the secretary's office; but that said moneys have always been kept as, and have been considered and used by, the board as moneys of the board which were available to be used for any expenditure which the board might authorize or direct (including new expenditures made for the erection of several new school buildings), and have been made out of said general fund. . . . That the money received by the board has on its records been kept in one general fund, showing, however, the source of the receipt of the same, and that the same is true of the records of the treasurer of the board; that the disbursements have been entered on the treasurer's books under the two heads of teachers' fund and general fund, and that no other subdivision or classification of said disbursements has been made or attempted to be made on the treasurer's books.' ''

The trial was had to the court, resulting in about 275 pages of evidence.   The trial court made the injunction permanent, and in doing so used, in part, the following language: "I think I will give you my view of the matter right here and now.   In the first place, I want to say that § 130 of our Constitution was not called to my attention at the former hearing, neither by counsel in argument nor in brief presented, and so, if that section had anything to do with the decision in this case on the preliminary hearing,—I mean if it should have had anything to do with it,—it did not have anything to do with the decision on the preliminary hearing. . . . They come into this court and say that, in one or two instances, in the neighborhood of $10,000 were levied for one purpose and not used, and can be turned over to

another purpose at the close of the year, because, forsooth, that fund has served its purpose for that given year. I do not believe the law contemplates anything of that kind. . . ."

Findings of fact and conclusions of law were prepared from which we quote: "That the contract entered into by the said defendants, the Board of Education of Independent School District, with the defendants, W. J. Edwards, Healy Plumbing & Heating Company, Gray Construction Company, are, and at all times since the attempted entering of them, have been void and of no effect." The defendant school board appeals to this court, demanding a trial *de novo*. We have set out the trial court's memorandum opinion and the conclusion of law showing its theory of the case and its reason for granting the injunction. Respondents in their brief define their position as follows: "There is but one major question in this case and it may be stated substantially as follows: Has the board of education the right to divert moneys raised by taxation for the purpose for which the tax was levied.? Preliminary thereto there is the question whether or not the statute requires the board to levy taxes for specific purposes, and in connection therewith we call attention to the statutes which are quoted and summarized as follows: (§§ 1289–1296, inclusive)." And again: "And so the question of law is here squarely presented: Can the board make a levy for one purpose and then divert the funds raised thereby to another and totally different purpose?" And at the very last of his brief he says: "It is very clear that the appellants have not complied with the law and that the contracts are illegal and void." We have set forth those extracts from respondent's brief because they set a limit upon the questions which we will consider. An examination of the evidence leaves us in much doubt as to the facts. The school district has been in operation under one name or another for more than thirty years. During that time the law has been materially changed and more divisions required in the moneys levied by taxation. Acting upon a suggestion of the trial court the secretary of the school board had a partial examination made of the books covering the years 1904–14. This statement was offered in evidence, but, having started at the beginning of the year 1904, is of little use to us. It is made the basis, however, of respondent's claim that at that time (1904) the building fund was overdrawn more than $13,000, and that moneys levied during succeeding years for building

purposes should now be used in paying this overdraft, and, therefore, be unavailable for the contemplated building. This evidence is so unsatisfactory, however, that we do not believe it sufficient to support a finding to that effect.

For example the secretary, in his testimony, was asked:

Q. Now, how much of the county apportionment fund did you have to make use of in order to bring the teachers' fund up to an apparent balance?

A. Well, if you go back to 1903, the time I started, we had used something like—in round numbers—$28,000.

In view of the fact that in the early days the funds were not kept separate, we do not believe we can hold that there was an overdraft in 1910 in the building fund. At least, it is not established by competent evidence. Another question of fact which we may as well consider here is whether the school board, during the years 1910–14, levied money for the teachers' fund with the intent to divert said fund to building uses. While respondent makes this accusation, he furnishes us but scanty proof. To be true, the tax actually levied during those years for teachers' purposes exceeded the amount used for payment of the teachers, but that is fully explained by the superintendent of schools, who gave the following explanation: ".   .   . It has always been the theory of the board that any balance of money they had went into the general fund. They have only recognized the general fund. And I know that when we have met to make these levies, that we have felt that we could not know definitely just how much money we were going to get from the different funds, the county tuition fund or the state apportionment funds,—or, at least, that has been the talk,—and we have made the levy ample to cover not only the payment of teachers, but we felt that if there was anything over, that it would go into the general fund, and I am absolutely sure that the board had no intention— because we had never levied to the limit on the building fund—no intention of putting that money in there for the purpose of a new high school building, only the purpose that, if there was anything left over there, that it could go into the general fund. And we have always built our school buildings here out of the general fund. We have never

had any building fund." Respondent concedes that if the board in good faith over-levies in the teachers' fund, and there remains an inconsequential sum, the law (not taking notice of trifles) will allow the transfer of said sum when the purpose for which it has been levied has been accomplished. Section 175, of our Constitution reads as follows: "No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied." This section has been before this court in State v. Klectzen, 8 N. D. 286, 78 N. W. 984, 11 Am. Crim. Rep. 324, and in the recent case of State ex rel. Linde v. Packard, 32 N. D. 301, 155 N. W. 666. Similar constitutional provisions have been construed in other states and the interpretation placed thereon by the various courts is thus treated at 37 Cyc. 728: "The constitutions of several states provide that every law imposing a tax shall state distinctly the object of the same to which only it shall be applied. It is held, however, that this applies only to the ordinary and general taxes for state purposes, and such as are imposed generally on all the taxable property in the state, and not to local taxes for local purposes, or to special taxes on peculiar kinds of property, or such as are in the nature of license or occupation fees; nor does the provision apply to laws which merely provide or regulate the machinery for assessing and collecting the tax. An exact enumeration of all the items of expenditure to which the revenue of the state may be applied is neither practical nor required by such a constitutional provision; it is sufficient if the tax law states in general terms that the taxes are to be applied to 'ordinary and current expenses of the state,' or to its 'general fund,' without further detail."

Cooley on Taxation, 3d ed. vol. 1, pages 549–557, treats the subject in the following words: "There are similar provisions in the Constitutions of other states. . . . Provisions like the one recited may, nevertheless, prevent some abuses, and considerable importance has been attached to them. But the purposes of government are so infinite in variety that the specification must, for the most part, be very general or the Constitution could not be complied with; and in New York it has been held that a statement in a tax law, that the money to be raised is to be paid into the treasury, to the credit of the general fund, is a sufficient compliance with the requirement. . . . The provision

applies only to annually recurring taxes and taxes imposed generally upon the entire property of the state, and is not applicable to successive taxes upon legacies or to local county taxes, or to laws authorizing the citizens of towns to impose taxes for bounties, or to statutes authorizing special local assessments."

Numerous citations are appended to those two texts. See: Miller v. Henry, 62 Or. 4, 41 L.R.A.(N.S.) 97, 124 Pac. 197; Jones v. Chamberlain, 109 N. Y. 100, 16 N. E. 72; Re McPherson, 104 N. Y. 306, 58 Am. Rep. 502, 10 N. E. 685. Not only the authorities but the dictates of common sense impel us to hold, as we do, that incidental balances levied in good faith and for the same general purpose, when the original purpose has been served, may be transferred from one minor account to another without violating §. 175 of our Constitution. For instance, if a certain school board made a levy of $1,000 for repairs for the current year, and thereafter a fire occurred, doing damage to the amount of $2,000, would it be contended that the school building must remain unrepaired for another year, until $1,000 in addition could be levied and raised, while there was $1,000 surplus in the teachers' fund, accumulated in good faith and not needed for that purpose? Furthermore, if the strict construction demanded by plaintiffs were allowed, it would prevent the transfer of moneys levied to pay the teachers in 1914 into a fund to pay the same teachers in 1915. It must be kept in mind also that this is not an action to enjoin the levy of a tax nor to prevent its collection, but is an action to restrain the fulfilment of a contract made by the board for the erection of a school building. Section 130 of the Constitution—which, by the way, is not found in all of the states having a section similar to § 175—reads: "The legislative assembly shall provide by general law for the organization of municipal corporations restricting their powers as to levying taxes and assessments, borrowing money and contracting debts, and money raised by taxation, loan or assessment for any purpose shall not be diverted to any other purpose except by authority of law." If this section applies to school corporations,—and we believe it does,—it, and not § 175, governs this case.

It is our conclusion, therefore, that § 175 of the Constitution does not apply to cases like the present. Therefore, a court of equity ought not, and will not, in this case, interfere. Judgment of the trial court is reversed.

On Petition for Rehearing (filed June 5, 1916. Rehearing denied June 20, 1916).

FISK, Ch. J. A petition for rehearing was filed by respondents and the same has received the attention which the importance of the case demands. More mature deliberation has served to convince us that while the reasons given for our first decision are not in all things tenable, the result arrived at is correct. We adhere to our former views only in so far as they are in harmony with this supplementary opinion.

As we construe the law, it was not incumbent upon the board to keep a separate and specific fund corresponding with each of the various purposes named in § 1298, for which the tax levy is therein authorized; nor do we construe such statute as requiring a separate levy for each of the five purposes therein stated. Respondents' able counsel has pointed to certain language in our school law which tends to lend some support to their contention, but we are satisfied that the legislative intent, as disclosed by the entire law, was in harmony with our conclusions. It is, no doubt, true that the levying resolution should properly set forth the amount deemed necessary by the board for each of the enumerated purposes stated in the statute. In other words, it is in the nature, and should properly be in the form, of a budget, but the levy should be made in a gross sum sufficient to meet the contemplated needs of the district, as enumerated in § 1298. Section 1301 recognizes this by providing that the auditor shall *calculate* and extend upon the assessment roll and tax list "the *tax* so levied by such board, and such *tax* shall be collected as other county taxes are collected." When such tax is collected it all properly goes into the general fund of the district. In fact, there are legally but two funds, aside from the general fund, which are required to be kept; namely, the sinking fund, when such fund is necessary, and the state tuition fund. When the latter fund is exhausted, and not before, the general fund may properly be drawn upon for the payment of teachers' salaries. In brief, Comp. Laws, § 1212, is general in its application, and clearly was intended to apply to all school districts, whether common, special or independent.

Respondents very forcibly contend that § 1298 provides for as many separate levies as there are purposes to be served; and, predicating their arguments upon such erroneous contention, they seek to apply the in-

hibition contained in § 175 of our Constitution in support of the ruling of the learned trial court. But the fact that the legislature enumerated in § 1298 the different purposes for which taxes may be levied, and provided in subsequent sections that the board shall cause the amount for such purposes to be certified to the county auditor, and restricted the amount to be raised for teachers' salaries and contingent expenses, as well as limited the taxes for the purchasing, leasing, or improving of sites, and the building, etc., of schoolhouses, to 20 mills on the dollar of the assessed valuation, does not warrant the contention that the board must keep a separate fund corresponding with each of such enumerated purposes. As before stated, the revenue derived from such levy all properly goes into the general fund and may be expended for any legitimate school purpose. It by no means follows from this that the board has a free hand, or is justified in raising a sum for teachers' salaries and contingent expenses grossly in excess of the amount believed to be "sufficient to maintain efficient and proper schools in the district," as prescribed in § 1302, but, as the language in § 1298 clearly indicates, the sum to be raised from time to time for the various enumerated purposes is left to determination by the board within its wise discretion as necessary and proper, and a gross and wilful abuse of such discretion may be remedied only at the polls, or possibly by removal from office pursuant to Compiled Laws, § 1326. The object of § 1311, requiring a report of the treasurer to be published just prior to the annual school election, containing a detailed statement of all moneys received and expended, is for the evident purpose of acquainting the electors of any such dereliction of duty on the part of the members of the board, and with a view of enabling such electors to seek a remedy at the polls by electing others in their stead.

The only qualification necessary to the above is the restriction contained in § 1302, limiting to 20 mills on the dollar the amount to be raised for the purchasing, etc., of sites, and building, etc., of schoolhouses. For a violation of such restriction any taxpayer would, no doubt, have a suitable remedy in the courts. It is not contended in this case, however, that such restriction has been violated, it being merely contended at the most that the board intentionally overlevied for the purpose of teachers' salaries with the intent of diverting the surplus to building purposes. Such overlevy did not in any year, however, ex-

ceed the limit of 20 mills aforesaid, and therefore it might legally have been raised directly for such building purposes. For the purposes of this case we are not called upon to decide whether the method pursued in raising the funds on hand applicable to meet payments under the contracts was proper and in strict conformity with the statute. It is enough to decide, as we do, that, being on hand in the general fund, and not being necessary for other school purposes, such balance may properly be considered in determining the vital issue in this lawsuit, as to whether, in entering into the contract in question, the board exceeded the constitutional debt limit.

As stated in the first opinion, § 175 of the state Constitution has no application whatever to this case. That section, in so far as it requires taxes to be applied to the object for which they are imposed, has to do only with taxes *imposed by law for general state purposes.* See Miller v. Henry, 62 Or. 4, 41 L.R.A.(N.S.) 97, 124 Pac. 197; 37 Cyc. 728. The decisions from Kansas, cited by respondents, are not in point, as the Kansas Constitution under which they were decided (1859, art. 11, § 4) differs materially from ours. It, like several others, and especially that in Kentucky (Const. 1890, § 180) requires not only that every law imposing a tax, but also every ordinance and resolution passed by any subordinate political subdivision levying a tax shall specify distinctly the purpose for which such tax is levied, and no tax levied and collected for one purpose shall be diverted to another. It is true, the Kansas Constitution is not as definite as the Kentucky Constitution on this point, but its language means the same thing, as construed by the Kansas court, while, as before stated, our Constitution in this respect is limited to state-wide levies made directly by the legislature.

It may be true, as respondents contend, that, even in the absence of a constitutional mandate such as they claim exists by force of § 175, the law would prohibit the diversion of taxes from the purpose for which they were levied to another purpose or object. Conceding this, our answer is that appellants are not seeking to thus divert the school revenues to another object. On the contrary, they seek merely to use them solely for legitimate school purposes and objects. For these reasons, briefly stated, the petition for rehearing is denied.