Cynthia K. PETERSON, Sharon Endrud, David Dougherty, Ray Hintz, John O'Connor, and Chuck Simpson, Petitioners and Appellants,

v.

McKENZIE COUNTY PUBLIC SCHOOL DISTRICT NO. 1, Respondent and Appellee.

Civ. No. 900301.

Supreme Court of North Dakota.

March 21, 1991.

Chapman and Chapman, Bismarck, for petitioners and appellants; argued by Michael Geiermann.

Fleck, Mather & Strutz, Bismarck, for respondent and appellee; argued by Warren H. Albrecht, Jr.

LEVINE, Justice.

Cynthia K. Peterson, Sharon Endrud, David Dougherty, Ray Hintz, John O'Connor, and Chuck Simpson (Petitioners) appeal from a district court judgment quashing an alternative writ of mandamus and dismissing their petition for a writ of mandamus requiring McKenzie County Public School District No. 1 (the District) to replace funds transferred from the District's general fund to its building fund. Because we conclude that a school board may lawfully transfer money from its general fund to its building fund, we affirm the judgment.

In 1989, the District transferred $1,200,-000 from its general fund to its building fund. In 1990, Petitioners filed a petition for a writ of mandamus requiring the District to replace those funds. Petitioners secured an alternative writ of mandamus temporarily restraining disbursements from the building fund and ordering the District to replace the funds or show cause why they have not been replaced in the general fund.

After a hearing, the district court concluded that school boards are not limited "in expending funds from their general fund solely for the uses as stated" in

§ 57–15–14.2(1), N.D.C.C. The court quashed the alternative writ of mandamus and dismissed the petition for a writ of mandamus. Petitioners appealed, contending that a school board does not have authority to transfer money from its general fund to its building fund and that the district court erred in denying their petition.

A writ of mandamus may be issued "to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station" (§ 32–34–01, N.D.C.C.) "when there is not a plain, speedy, and adequate remedy in the ordinary course of law" (§ 32–34–02, N.D.C.C.). "A petitioner for a writ of mandamus must show a clear legal right to performance of the act sought to be compelled and the denial of a writ will not be overturned unless the trial court abused its discretion." *Fargo Beverage Co. v. City of Fargo*, 459 N.W.2d 770, 773 (N.D.1990).

Petitioners first argue that to resolve the issue whether a school board in North Dakota has the authority to transfer funds from its general fund to its building fund, we must narrowly examine and construe the statutory framework for such authority because of well settled rules of construction. Petitioners contend that a school board is not expressly or impliedly authorized to transfer money from its general fund to its building fund. They argue that school boards have only such powers as are expressly or impliedly granted by statute. *Fargo Educ. Ass'n v. Fargo Pub. School Dist. No. 1*, 291 N.W.2d 267 (N.D.1980). Petitioners remind us that the rule of strict construction applies in defining the powers of school boards. *Myhre v. School Bd. of North Cent. Pub. School Dist. No. 10*, 122 N.W.2d 816 (N.D.1963).

■ Those arguments are well taken as far as they go. The rule of strict construction also applies in defining municipal powers. *Haugland v. City of Bismarck*, 429 N.W.2d 449 (N.D.1988). But once a municipality's powers have been determined, the rule of strict construction no longer applies, and there is a range of reasonableness within which a municipality's manner and means of exercising those powers will not be interfered with or upset by the judiciary. *Id.* A school district is a municipality for purposes of Title 57, N.D. C.C. Section 57–02–01(9), N.D.C.C. Thus, school district taxing and funding powers are subject to the same rules of construction as those powers of other municipalities. It is of course axiomatic that our construction of any statute must "effect[ ] its objects and ... promot[e] justice." Section 1–02–01, N.D.C.C.

School boards "are usually given extensive discretionary powers in order that they may the better assist in carrying out the general school system adopted by the state." 16A *McQuillin Mun. Corp.*, § 46.07 (3rd ed. 1984). "The powers conferred upon school boards frequently include the raising of funds for the operation and maintenance of the schools, and the management and disposition of such funds." *Id.*, § 46.07a. Our Legislature has provided school boards with extensive discretionary powers relating to the raising, management, and disposition of funds for the operation and maintenance of schools. Petitioners point us to only some of these statutes, namely, §§ 57–15–14, 57–15–14.2, 57–15–16, and 57–15–17, N.D.C.C. We believe it helpful to consider a number of additional statutes as well which trace the breadth of authority afforded school boards and serve as a backdrop in considering the statutes relied upon by Petitioners.

Section 15–29–08, N.D.C.C., invests school boards with very broad powers to establish "a system of free public schools"; acquire, improve, construct and maintain buildings; employ and pay teachers; "have the custody and control of all school property"; "levy a tax upon the property in the district for school purposes"; and to "amend and certify budgets and tax levies as provided in title 57."

School boards have authority to create a variety of special funds, including a "special reserve fund ... which shall not exceed in amount at any one time the sum which could be produced by a levy of the maximum mill levy ... for that year" (§ 57–19–01, N.D.C.C.), into which may be transferred any unencumbered surplus

funds on hand other than sinking or building funds (§ 57–19–03, N.D.C.C.); an "incidental revolving fund" in an amount "established by the school board and drawn from the general fund" (§ 15–29–13, N.D.C.C.); an "interim fund ... to meet the cash requirements ... for that portion of such fiscal year prior to the receipt of taxes therein," which shall not exceed "three-fourths of the current annual appropriation for all purposes other than debt retirement purposes and appropriations financed from bond sources" (§ 57–15–27, N.D.C.C.); a "school building fund" (§ 57–15–16, N.D.C.C.); and a "sinking fund ... for the payment of outstanding bonds" into which may be transferred money from the general fund (§ 15–44–10, N.D.C.C.).

Petitioners contend that § 57–15–14, N.D.C.C., does not expressly authorize transfers from the general fund to any other fund and that no such authority may be implied. They contrast § 57–15–14, N.D.C.C., with § 57–19–03, N.D.C.C., which authorizes the transfer of unencumbered surplus funds into a special reserve fund, and § 57–19–09, N.D.C.C., which authorizes the transfer of money from the special reserve fund into the general fund. Section 57–15–14, N.D.C.C., provides, with certain exceptions: "The aggregate amount levied each year for the purposes listed in section 57–15–14.2 by any school district ... may not exceed ... a general fund levy of one hundred eighty mills on the dollar of the taxable valuation of the district...." Section 57–15–14.2, N.D.C.C., provides in part:

"1. A school board of any school district may levy an amount sufficient to cover general expenses including the costs of ... [eighteen listed purposes, none of which expressly authorizes general fund spending to acquire buildings or the transfer of general fund money to a building fund].

\* \* \* \* \* \*

"2. This limitation does not apply to mill levies pursuant to subdivisions a, c, f, and j of subsection 1...."

Section 57–15–14 sets mill levy limitations; it does not address the budgeting or transferring of general fund money. We are not persuaded that the authority specifically provided by § 57–19–03, N.D.C.C., to transfer unencumbered surplus funds into a special reserve fund implies that transfers of general fund money into any other fund are precluded. The authority provided by § 57–19–09, N.D.C.C., to transfer special fund money to the general fund does not resolve or aid in resolving the issue of whether general fund money may be transferred to another fund.

Petitioners contend that § 57–15–14.2, N.D.C.C., precludes transfer of money to a building fund because: 1) subsection 1 provides an exclusive list of purposes for general fund money; 2) "[t]he term 'general expenses', should not be defined as including the maintenance, construction, or erection of buildings"; and 3) "[t]he word 'limitation'" in subsection 2 "must be given some meaning."

We will address Petitioners' first two arguments together. What is now codified as a list of general purposes in § 57–15–14.2(1), N.D.C.C., resulted from combining several separate mill levy statutes for convenience. S.L.1983, ch. 608, consolidated a number of separate mill levy statutes into two levies: special levies by school board action [codified as § 57–15–14.2(1), N.D.C.C.] and general fund levies requiring voter approval [codified as § 57–15–14.3(1), N.D.C.C.]. In 1987, the two were combined (S.L.1987, ch. 232) into one general fund statute in § 57–15–14.2(1), N.D.C.C., and § 57–15–14.3, N.D.C.C., was repealed. Section 57–15–14.2(1), N.D.C.C., provides: "A school board of any school district may levy an amount sufficient to cover general expenses including the costs of" eighteen listed items. We interpret words in a statute in their ordinary sense, unless it is clear that a different meaning is intended. Section 1–02–02, N.D.C.C. The ordinary sense of the word "including" is that it is not a word of limitation, but of enlargement. *See State v. Vermilya,* 423 N.W.2d 153 (N.D.1988); *Lucke v. Lucke,* 300 N.W.2d 231 (N.D.1980). Thus, "general expenses" may include costs not listed in

§ 57–15–14.2(1), N.D.C.C. The most obvious omission from the purposes listed in § 57–15–14.2(1), N.D.C.C., is the payment of teacher salaries. We construe statutes to avoid absurd results. *Larson v. Wells County Water Resource Bd.*, 385 N.W.2d 480 (N.D.1986). Another indication that § 57–15–14.2(1), N.D.C.C., does not provide an exclusive list of the purposes to which general fund money may be devoted is § 15–34.2–13, N.D.C.C., which provides authority to purchase or construct bus storage facilities with either general fund money or building fund money. In addition, the fact that some statutes, such as § 57–15–17(1)(b), N.D.C.C., specifically restrict the use of special funds, while none specifically restricts the use of general funds, indicates that general fund money may be used for any legitimate purpose.

We view as a helpful analogue a case involving a parallel dispute. Section 1298, C.L.1913, gave the board of education of an independent school district taxing authority to raise funds for five enumerated purposes. In construing that statute in a dispute over the authority to transfer funds from the teachers' fund to the general fund for the construction of a school, this court said in *Stinson v. Thorson*, 34 N.D. 372, 384, 158 N.W. 351, 353 (1916):

"But the fact that the Legislature enumerated in section 1298 the different purposes for which taxes may be levied, and provided in subsequent sections that the board shall cause the amount for such purposes to be certified to the county auditor, and restricted the amount to be raised for teachers' salaries and contingent expenses, as well as limited the taxes for the purchasing, leasing, or improving of sites, and the building, etc., of school houses, to 20 mills on the dollar of the assessed valuation, does not warrant the contention that the board must keep a separate fund corresponding with each of such enumerated purposes. As before stated, the revenue derived from such levy all properly goes into the general

fund and may be expended for any legitimate school purpose." [1]

Thus, a listing of general purposes does not necessarily preclude using funds for other legitimate purposes.

We conclude that § 57–15–14.2(1), N.D.C.C., does not provide an exclusive list of eighteen purposes to which general fund money may be devoted and that "general expenses" may include costs not listed in § 57–15–14.2(1), N.D.C.C. We are not persuaded that general expenses may not include such things as the maintenance, construction, or erection of buildings.

■ Petitioners contend that the word "limitation" in § 57–15–14.2(2), N.D.C.C., refers to the eighteen listed purposes for general fund spending contained in § 57–15–14.2(1), N.D.C.C. The legislative history of § 57–15–14.2(2), N.D.C.C., however, clearly shows that the word "limitation" refers to the mill-levy limitation imposed by § 57–15–14, N.D.C.C., rather than to the eighteen purposes listed in § 57–15–14.2(1), N.D.C.C.

As originally adopted (S.L.1983, ch. 608, § 17), § 57–15–14.2, N.D.C.C., provided in part:

"1. A school board of any school district may levy an amount sufficient to cover the costs of ... [nine listed purposes, none of which expressly authorizes general fund spending to acquire buildings or transfer of general fund money to a building fund].

\*    \*    \*    \*    \*    \*

"2. A school board may levy no more than a total of ninety mills for the purposes listed in subsection 1 except that this limitation does not apply to mill levies pursuant to subdivisions a, c, and f of subsection 1."

Subsections 1 and 2 of § 57–15–14.2 have since been amended to their present form, which we have already set forth. For our purposes here, in construing the word "limitation" in subsection 2, statutory

---

1. We note that the Attorney General has also long advised that a school district may expend general fund money for any legitimate school purpose. *See, e.g.,* May 26, 1966, letter from then Assistant Attorney General Gerald W. VandeWalle to Anna M. Orser, Steele County Superintendent of Schools.

amendments made by S.L.1987, ch. 232 (H.B. 1299), are important.

S.L.1987, ch. 232, § 6, amended § 57–15–14, N.D.C.C., to provide, with certain exceptions: "The aggregate amount levied each year for the purposes listed in section 57–15–14.2 ... may not exceed ... a general fund levy of one hundred eighty mills on the dollar of the taxable valuation of the district." S.L.1987, ch. 232, § 7, amended § 57–15–14.2(2), N.D.C.C., by striking the 90–mill levy limitation it previously contained and amending the first sentence to read: "This limitation does not apply to mill levies pursuant to subdivisions a, c, f, and j of subsection 1." Representative Klundt, testifying in support of H.B. 1299 before the 1987 Senate Education Committee, explained:

> "This bill primarily accomplishes two things: 1) It consolidates the present general fund and special fund into one general operating general fund. 2) It increases the 90 mill cap and 70 mill cap into a 180 mill cap.... In response to Senator Heinrich's question, you can't take money from the special fund and put it into the general fund, but you can take money from the general fund and put it into the special fund."

The Legislative Council Bill Summary stated:

> "As amended [H.B. 1299], combines the school district general fund and the school district special fund into one general fund and authorizes school districts to levy up to a maximum of 180 mills to cover the expenses of items in the general fund. However, the limitation does not apply to levies for board and lodging for high school students, tuition, final judgments, or asbestos removal."

Thus, it is clear that the words, "[t]his limitation" in § 57–15–14.2(2) refer to the 180–mill levy limitation of § 57–15–14, and not to the eighteen items listed in § 57–15–14.2(1).

■ Petitioners assert that §§ 57–15–16 and 57–15–17, N.D.C.C., "are the exclusive authority granted by the legislature to deal with building issues." Section 57–15–16(1), N.D.C.C., provides in part:

> "The governing body of any school district shall levy taxes annually for a school building fund, not in excess of twenty mills, which levy shall be in addition to and not restricted by the levy limitations prescribed by law, when authorized to do so by sixty percent of the qualified electors voting upon the question at a regular or special election in any school district. The governing body of such school district may create such building fund by appropriating and setting up in its budget for such an amount not in excess of twenty percent of the current annual appropriation for all other purposes combined, exclusive of appropriations to pay interest and principal of the bonded debt, and not in excess of the limitations prescribed by law."

Section 57–15–17(1)(a), N.D.C.C., provides in part:

> "All revenue accruing from appropriations or tax levies for a school building fund together with such amounts as may be realized for building purposes from all other sources, shall be placed in a separate fund known as a school building fund...."

Section 57–15–16(1) permits a school board to levy extra taxes for a school building fund if authorized to do so by sixty percent of the qualified electors in a school district election. It does not require the school board to levy taxes for such a fund. Rather than limiting the authority of the school board, it expands the board's taxing authority. Section 57–15–16 does not preclude the use of general fund money for building purposes. *See Stinson v. Thorson, supra.*

■ The language in § 57–15–17(1)(a) is broad enough to encompass a transfer of money from a school district's general fund. It recognizes that a school building fund may be funded from "other sources" than a specific appropriation or tax levy for a school building fund.

The very broad powers invested in school boards by § 15–29–08, N.D.C.C., the broad statutory authority provided to school boards to set up various special funds, the expansive language employed in §§ 57–15–

14.2, 57–15–16, and 57–15–17, N.D.C.C., the legislative history of §§ 57–15–14 and 57–15–14.2, N.D.C.C., and the discretion afforded school boards in transferring funds by *Stinson v. Thorson, supra,* lead us to conclude that a school board has implied authority to transfer money from the district's general fund to its building fund.

Petitioners say that allowing a school district to transfer money from the general fund to the building fund will circumvent the will of the voters because a "proposal to go above the 180 mill limit [of § 57–15–14, N.D.C.C.] must be approved by 50 or 55 percent of the voters" while "the building fund specifically requires a 60 percent majority of the voters to change or alter the funding for the building fund. N.D.C.C. § 57–15–16." Petitioners have not shown how transferring money from the general fund to the building fund circumvents the will of the voters to decide whether to impose an optional building fund levy, which requires approval by sixty percent of the electors at a school election. The court addressed board accountability in *Stinson v. Thorson, supra,* 34 N.D. at 384, 158 N.W. at 353–354:

"It by no means follows from this that the board has a free hand, or is justified in raising a sum for teachers' salaries and contingent expenses grossly in excess of the amount believed to be 'sufficient to maintain efficient and proper schools in the district,' as prescribed in section 1302; but, as the language in section 1298 clearly indicates, the sum to be raised from time to time for the various enumerated purposes is left to determination by the board within its wise discretion as necessary and proper, and a gross and willful abuse of such discretion may be remedied only at the polls, or possibly by removal from office pursuant to Compiled Laws, § 1326. The object of section 1311 requiring a report of the treasurer to be published just prior to the annual school election, containing a detailed statement of all monies received and expended, is for the evident purpose of acquainting the electors of any such dereliction of duty on the part of the members of the board, and with a view

of enabling such electors to seek a remedy at the polls by electing others in their stead."

Section 15–29–08(17), N.D.C.C., requires a school board to publish a report of financial condition each year. No question has been raised with regard to the School District's accumulation of general fund monies sufficient to allow a transfer of $1,200,000 to the building fund in light of § 57–15–13, N.D.C.C., which provides in part:

"The school board of each public school district, in levying taxes, shall be limited by the amount necessary to be raised for the purpose of meeting the appropriations included in the school budget of the current fiscal year, and the sum necessary to be provided as an interim fund, together with a tax sufficient in amount to pay the interest on the bonded debt of the district and to provide a sinking fund to pay and discharge the principal thereof at maturity."

Petitioners have informed us that in the 1987 North Dakota legislative session, "Senate Bill 2043 was introduced to facilitate the transfer of general fund monies to the building fund" and was defeated. They argue that the introduction of this bill supports their position that our statutes do not authorize the school board to transfer general fund monies to the building fund. We pointed out in *State ex rel. Spaeth v. Eddy Furniture Co.,* 386 N.W.2d 901, 905 n. 4 (N.D.1986), the futility of trying to "glean an intent" from the Legislature's defeat of a bill. We are no less convinced of the futility of an endeavor to glean an intent from the mere introduction of a bill.

Because the District was authorized to transfer money from its general fund to its building fund, the Petitioners had no right to performance of the act sought to be compelled-replacement of the funds transferred from the general fund to the building fund—and the district court did not abuse its discretion in denying the petition for a writ of mandamus.

Affirmed.

ERICKSTAD, C.J., VANDE WALLE, MESCHKE and GLASER, District Judge, concur.

GLASER, District Judge, sitting in place of GIERKE, J., disqualified.