Charles HODEK, Jr. and Greg Daws, Plaintiffs and Appellants,

Allan Anderson, Larry Zacha, Francis Solberg, and Daniel Shirek, Plaintiffs,

v.

GREATER NELSON COUNTY CONSORTIUM, a/k/a Dakota Prairie Public School District No. 1, Defendant and Appellee.

Civ. No. 930351.

Supreme Court of North Dakota.

Aug. 24, 1994.

Order Denying Rehearing or Modification Sept. 14, 1994.

Wheeler Wolf, Bismarck, for plaintiffs and appellants; argued by Albert A. Wolf.

Pearce & Durick, Bismarck, for defendant and appellee; argued by David E. Reich.

NEUMANN, Justice.

Charles Hodek, Jr., and Greg Daws have appealed from a judgment dismissing an action against the Greater Nelson County Consortium. We affirm in part, reverse in part, and remand.

Pursuant to Ch. 15–27.6, N.D.C.C., seven independent public school districts—Aneta, Crary, Lakota, McVille, Michigan, Tolna, and Unity—formed a consortium on July 1, 1990, to plan and implement the restructuring of school district boundaries. Each participating district appointed one of its members to an interim district board, which developed a proposal to merge the seven member districts into a single school district on July 1,

1993. The board determined the value and amount of all school property and indebtedness of each participating school district, made an adjustment of all property, assets, debts, and liabilities among the districts, determined the amount necessary to meet the expenses of the proposed reorganized district, and proposed a tax levy to meet those expenses.[1]

After approval of the county committee and the state board, a special election was called for November 10, 1992. The ballot asked voters to decide if the seven school districts should "form a new school district, with a general fund levy of 174.83 mills, in accordance with the reorganization proposal." Voters in the Crary and Lakota school districts rejected the proposal, thus removing them from the consortium. In December 1992, an interim district board made up of representatives from the five remaining districts voted to adopt a revised restructuring plan.[2] The revised plan proposed the merger of the Aneta, McVille, Michigan, Tolna, and Unity school districts into a single school district—Dakota Prairie School District No. 1—on July 1, 1993, and proposed: "The max-

imum general mill levy for the school district for the 1993–94 school year will be 188 mills."

By complaint dated June 21, 1993, Hodek, Daws, Allan Anderson, Larry Zacha, Francis Solberg, and Daniel Shirek brought a declaratory judgment action requesting that the district court issue orders:

"1. Issue its interim Order restraining defendant from proceeding with actions in reliance upon the levy of a tax at 188 mills and with actions taken for expenditure of funds in reliance upon the revenue from such mill levy without a re-vote;

"2. For the Court's further determination that the proposed general mill levy for the school district for the 1993–94 school year at 188 mills cannot be accomplished without a re-vote...."

The district court determined:

"5. The Revised Restructuring Plan for the Dakota Prairie Public School District was approved by the State Board of Public School Education prior to the hearing of this matter on June 28, 1993. That Plan provided for a general mill levy for the

---

1. As enacted in 1991, § 15–27.6–08, N.D.C.C., provided:

*"Determination and adjustment of property, assets, debts, and liabilities among districts—Determination of tax levy—Appeals.* After the hearing, the interim district board shall determine the value and amount of all school property and all bonded and other indebtedness of each school district affected by the reorganization proposal and shall consider the amount of outstanding indebtedness and make an equitable adjustment of all property, assets, debts, and liabilities among the districts involved. The interim district board shall also determine the amount necessary to meet the expenses of the proposed reorganized district and shall propose a tax levy sufficient to meet those expenses. The interim district board shall submit the proposed tax levy to the county committee and the state board as part of the reorganization proposal, and if approved by the county committee and the state committee, the proposed tax levy must be included as part of the proposal and submitted to the electors of the proposed new district. Tax levies submitted as part of a reorganization proposal that is approved are not subject to mill levy limitations provided by law. Appeals on the question of adjustment of property, debts, and liabilities among the districts may be made as provided in section 15–27.3–07."

2. As enacted in 1991, § 15–27.6–10(3), N.D.C.C., provided:

"3. If fewer than all of the districts vote in favor of a new district, any contiguous districts voting in favor of the proposal shall form a new district if the new district would qualify to receive the payments provided for in section 15–27.6–11 and if approved by the state board. Any contiguous districts voting in favor of forming a new district, but that would not qualify for payments under section 15–27.6–11, may form a new district. To form a new district, the board members of the interim district board who represent the contiguous districts involved shall make a determination and adjustment of property, assets, debts, and liabilities of the districts as provided in section 15–27.3–04 and make a determination of tax levy as provided in section 15–27.3–06 and submit a new proposal to the state board for approval. If the state board approves the plan, the county superintendent shall make the proper adjustment of the property, assets, debts, and liabilities as provided in the proposal and organize and establish the districts and, in doing so, shall perform all other necessary duties as provided in subsection 6 of section 15–27.3–08."

school district for the 1993–94 school year of 188 mills.

\* \* \* \* \* \*

"7. Two bills were enacted amending § 15–27.6–10(3), namely Senate Bill 2528 passed by the House on March 18, 1993 and House Bill 1003 passed by the Senate on April 24, 1993. Neither of these bills contained a requirement to re-vote or a retroactive provision. Therefore, neither bill was effective prior to approval of the Revised Restructuring Plan by the State Board of Public School Education."

The court concluded:

"2. Defendant has established that there is no genuine issue of any material fact; that there is no statutory basis for granting plaintiffs' request for a re-vote; that the two pieces of 1993 legislation (namely House Bill No. 1003 and Senate Bill No. 2528) are not irreconcilable or retroactive; that the revised proposal for the Dakota Prairie Public School District was approved by the State Board for Public School Education prior to July 1, 1993; and that the defendant is therefore entitled to a judgment of dismissal as a matter of law."

A judgment of dismissal was entered. Hodek and Daws appealed.

█ As noted above, after the November 10, 1992, special election removed the Crary and Lakota school districts from the consortium, the interim district board made up of representatives from the five remaining districts adopted, and the state board approved, a revised restructuring plan, which proposed the merger of the Aneta, McVille, Michigan, Tolna, and Unity districts into one district on July 1, 1993, and proposed a maximum general fund mill levy of 188 mills for the 1993–94 school year. This was done in accordance with § 15–27.6–10(3), N.D.C.C. (S.L.1991, ch. 170, § 9), which, prior to its amendments in the 1993 legislative session, did not require a re-vote or contain a mill levy limit.[3] The argument of amicus curiae that § 15–27.6–10, N.D.C.C., requires tax levies to be deter-

mined as provided in § 15–27.3–06, N.D.C.C., which requires any proposed tax levy to be submitted to the electors of a proposed district is without merit. A plain reading of § 15–27.6–10, N.D.C.C., discloses that only an initial proposal must be put to a vote. Once a vote has been taken, however, and some, but not all, districts vote in favor of a new district, the interim district board can, without an election, adopt a new proposal and determine the tax levy under § 15–27.6–10(3), N.D.C.C., as enacted in 1991.

Section 15–27.6–10(3), N.D.C.C., was amended four times in the 1993 legislative session. For purposes of this case, we are concerned with S.B. 2528 and H.B. 1003. Section 15–27.6–10(3), N.D.C.C., was first amended by passage of S.B. 2528 (S.L.1993, ch. 182, § 6) in the Senate on February 10, 1993, and in the House on March 18, 1993. That amendment specifically provided that no additional vote is required on a revised reorganization proposal submitted after an election in which some, but not all, districts voted to reorganize and those districts voting in favor complete a reorganization under a revised proposal. That amendment also introduced a mill levy limitation, requiring that the revised mill levy not exceed the number of mills voted on under the original reorganization proposal by more than ten percent. That amendment had no effect on the revised reorganization plan at issue in this case, however. House Bill 1003 (S.L.1993, ch. 3, § 16), which was passed by both the House and the Senate on April 24, 1993, prevailed over S.B. 2528. See § 1–02–09.1, N.D.C.C. (If amendments to the same statute "are irreconcilable, the latest in date of enactment prevails."). The other 1993 amendments [S.L.1993, ch. 179, § 3 (S.B. 2184) and S.L. 1993, ch. 184, § 2 (H.B. 1413) ] were ineffective on this reorganization and in the resolution of this appeal.

House Bill 1003 amended § 15–27.6–10(3), N.D.C.C., to provide in part:

"If fewer than all of the districts vote in favor of a new district, any contiguous districts voting in favor of the proposal

---

3. Both § 15–27.6–08, N.D.C.C., and § 15–27.3–06, N.D.C.C., which is referred to in the 1991 version of § 15–27.6–10(3), N.D.C.C., specifically

provide that tax levies submitted as part of an approved reorganization proposal are not subject to mill levy limitations provided by law.

shall form a new district provided the state board approves and:

\*    \*    \*    \*    \*    \*

"To form a new district, the board members of the interim district board who represent the contiguous districts involved shall make a determination and adjustment of property, assets, debts, and liabilities of the districts as provided in section 15–27.3–04 and make a determination of tax levy as provided in section 15–27.3–06, hold a hearing similar to the one described in section 15–27.6–07, and submit a new proposal to the state board for approval. *No additional vote is required on the revised proposal, including a proposal that becomes effective on July 1, 1993. However, the newly proposed mill levy may not exceed the general fund mill levy limitations provided in section 57–15–14 plus the additional levy authorized by Senate Bill No. 2024, as approved by the fifty-third legislative assembly.* For purposes of determining the amount that can be levied under Senate Bill No. 2024, the amount levied in dollars in the base year is the amount proposed to be levied in dollars by the new district in its first year of operation. If the state board approves the plan, the county superintendent shall make the proper adjustment of the property, assets, debts, and liabilities as provided in the proposal and organize and establish the districts and, in doing so, shall perform all other necessary duties as provided in subsection 5 of section 15–27.3–08." (Emphasis added.)

Senate Bill 2024 (S.L.1993, ch. 548, § 1), referenced in H.B. 1003, provides in part:

"3. For taxable year 1993, a taxing district may elect to levy at most three percent more than the amount levied in dollars in the base year. For taxable year 1994, a taxing district may elect to levy at most two percent more than the amount levied in dollars in the base year."

■ School boards have only such powers as are expressly or impliedly granted by statute. *Peterson v. McKenzie County Pub. Sch. Dist. No. 1,* 467 N.W.2d 456 (N.D.1991); *Fargo Educ. Ass'n v. Fargo Pub. Sch. Dist. No. 1,* 291 N.W.2d 267 (N.D.1980). When Dakota Prairie School District No. 1 came into existence on July 1, 1993, its powers were limited to those expressly or impliedly granted by statute. By its plain and explicit language, H.B. 1003's amendment of § 15–27.6–10(3), N.D.C.C., was applicable to reorganization proposals becoming effective on July 1, 1993. Thus, no additional vote was necessary to reorganize the five districts voting in favor of reorganization into one district, but the new district had no power to levy taxes in excess of the mill levy limit in H.B. 1003, which incorporated S.B. 2024. The maximum mill levy of 188 mills contained in the revised reorganization proposal exceeded the mill levy limit contained in H.B. 1003 for the first year of the new district's operation.

The district court and the school district view H.B. 1003 as inapplicable because it was not retroactive. We see no retroactivity issue. One law was in effect when the merger proposal was approved. By the time that proposed merger was to take effect, another law, H.B. 1003, applied to that merger and compliance with it became necessary. Application of the new law was not retroactive; when and after the new district came into existence on July 1, 1993, it was subject to whatever new laws were or might become applicable to it.

Hodek and Daws appear to argue that they and others in the school districts have some kind of vested right to vote on a revised restructuring proposal involving a mill levy increase. We disagree. " 'The inhabitants of a school district have no property rights in the boundaries thereof or in the maintenance of their district.' " *Public Sch. Dist. No. 35 v. Cass County Bd. of Comm'rs,* 123 N.W.2d 37, 41 (N.D.1963), quoting *Anderson v. Peterson,* 78 N.D. 949, 54 N.W.2d 542, 551 (N.D. 1952).

The school district contended in a reply brief in response to the brief of amicus curiae:

"Pursuant to § 15–27.6–10(3), the interim board appropriately determined a revised mill levy necessary to operate the district which was approved by the State Board of Public School Education on December 14,

1992. Having failed to timely appeal the decision of the State Board, pursuant to Chapter 28–32, N.D.C.C., the Court lacks jurisdiction to hear the instant action and this appeal must be dismissed."

The argument was not supported by citations to relevant authorities, was not accompanied by any supportive reasoning, and is without merit. No reason has been articulated as to why a taxpayer who did not appeal an administrative decision made when one law was in effect should be precluded thereafter from suing to prevent a school board's exercise of acts in excess of its authority after the law has been changed. Resolution of the school district's authority in this matter turns on a change in the law, not on our jurisdiction to consider the appeal.

■ "A school district is a municipality for purposes of Title 57, N.D.C.C. Section 57–02–01(9), N.D.C.C. Thus, school district taxing and funding powers are subject to the same rules of construction as those powers of other municipalities." *Peterson v. McKenzie County Pub. Sch. Dist. No. 1, supra,* 467 N.W.2d at 458. "The legislature may enlarge, abridge, qualify or withdraw the powers of a municipal corporation." Charles S. Rhyne, *The Law of Local Government Operations* § 4.2, p. 56 (1980). As this court said in *State ex rel. Minot v. Gronna,* 79 N.D. 673, 59 N.W.2d 514, 529 (1953):

"'In general, the functions, powers, and privileges of municipal corporations may be changed or modified at the discretion or pleasure of the legislature creating them; they may be increased or extended, or, on the other hand, they may be restricted, diminished, or withdrawn.' 62 C.J.S., Municipal Corporations, § 183, pp. 340, 341.

\* \* \* \* \* \*

"'The state may withhold, grant or withdraw powers and privileges as it sees fit. However, great or small its sphere of action, it remains the creature of the state exercising and holding powers and privileges subject to the sovereign will.' *Trenton v. New Jersey,* 262 U.S. 182, 187, 43 S.Ct. 534, 537, 67 L.Ed. 937, 941 [ (1923) ]."

After the state board approved the proposed 188 mill levy in the revised restructuring proposal in December 1992, the Legislature chose to abridge restructured school districts' taxing power by imposing a mill levy limit in H.B. 1003, in cases where an election resulted in some, but not all, consortium participants voting to restructure and those districts voting in favor of restructuring proceeding to form a new district. Thus, regardless of the situation existing in December 1992 when the state board approved the revised restructuring plan with a proposed mill levy of 188 mills, by the time the new school district came into existence, as of July 1, 1993, it was subject to the mill levy limit of H.B. 1003.[4]

The judgment is affirmed to the extent that it dismissed the plaintiff's claim that an additional vote was necessary; reversed to the extent that it authorized a mill levy of 188 mills, which is higher than the mill levy limit contained in H.B. 1003; and the matter is remanded for entry of an appropriate judgment in accordance with this opinion.

VANDE WALLE, C.J., and LEVINE, MESCHKE and SANDSTROM, JJ., concur.

On Petition for Rehearing.

PER CURIAM.

The appellee, Greater Nelson County Consortium, a/k/a Dakota Prairie Public School District No. 1, has petitioned this court for rehearing, or in the alternative, for modification of the final sentence of the opinion, which states that a levy of 188 mills exceeds the limit contained in H.B. 1003. The appellee argues that H.B. 1003 refers to Section 57–15–14, N.D.C.C., which provides certain ways in which a school district may exceed the maximum levy established in Section 57–15–14. Appellee asserts that one or more of those exceptions should apply in this case.

The petition for rehearing or modification is denied. However, because this particular issue was neither briefed nor argued to this

4. Section 57–15–13, N.D.C.C., provides in part:

"School district taxes must be levied by the governing body of each school district on or before the last day of July of each year."

court, appellee is not precluded from making this argument to the trial court.

VANDE WALLE, C.J., and MESCHKE, SANDSTROM and NEUMANN, JJ., concur.

LEVINE, J., was unavoidably absent.