Charles **HODEK**, **Jr.**, **Greg Daws**, **Allan Anderson**, **Larry Zacha**, **Francis Solberg**, **and Daniel Shirek**, **Plaintiffs and Appellees**,

v.

**GREATER NELSON COUNTY CONSORTIUM**, **a/k/a Dakota Prairie Public School District No. 1**, **Defendant and Appellant.**

Civ. No. 940303.

Supreme Court of North Dakota.

May 9, 1995.

Albert A. Wolf, of Wheeler Wolf, Bismarck, for plaintiffs and appellees.

Gary R. Thune, of Pearce & Durick, Bismarck, for defendant and appellant.

SANDSTROM, Justice.

This appeal again raises the issue of the maximum general fund mill levy Dakota Prairie Public School District No. 1 (Dakota Prairie) could impose for 1993–1994, its first year of operations. After a remand following a prior appeal, *see Hodek v. Greater Nelson County Consortium*, 520 N.W.2d 825 (N.D. 1994), judgment was entered declaring the proper 1993–94 mill levy for Dakota Prairie was 174.83 mills, and the excess taxes collected be refunded or credited to the property owners. Dakota Prairie appealed arguing the correct mill levy was 188 mills. We reverse and remand, concluding the correct levy was 185.4 mills.

I

Under N.D.C.C. ch. 15–27.6 seven independent public school districts—Aneta, Crary, Lakota, McVille, Michigan, Tolna, and Unity—formed a consortium on July 1, 1990, to plan and implement the restructuring of school district boundaries. *Hodek* at 825. An election on the resulting reorganization proposal was held on November 10, 1992. "The ballot asked voters to decide if the seven school districts should 'form a new school district, with a general fund levy of 174.83 mills.'" *Hodek* at 826. The election removed Crary and Lakota from the consortium. The interim district board adopted a revised restructuring plan merging the five remaining school districts into one district, Dakota Prairie, on July 1, 1993, and proposing a maximum general fund mill levy of 188 mills for the 1993–94 school year. "This was done in accordance with § 15–27.6–10(3), N.D.C.C. (S.L.1991, ch. 170, § 9), which, prior to its amendments in the 1993 legislative session, did not require a re-vote or contain a mill levy limit." *Hodek* at 827.

N.D.C.C. § 15–27.6–10(3) was amended four times in the 1993 legislative session. Of the relevant amendments, H.B. 1003 prevailed. *Hodek* at 827. It amended N.D.C.C. § 15–27.6–10(3), to provide in part:

" 'If fewer than all of the districts vote in favor of a new district, any contiguous districts voting in favor of the proposal shall form a new district provided the state board approves and:

\* \* \* \* \* \*

" 'To form a new district, the board members of the interim district board who represent the contiguous districts involved shall ... make a determination of tax levy ... and submit a new proposal to the state board for approval. *No additional vote is required on the revised proposal, including a proposal that becomes effective on July 1, 1993. However, the newly proposed mill levy may not exceed the general fund mill levy limitations provided in section 57–15–14 plus the additional levy au-*

*thorized by Senate Bill No. 2024, as approved by the fifty-third legislative assembly.* For purposes of determining the amount that can be levied under Senate Bill No. 2024, the amount levied in dollars in the base year is the amount proposed to be levied in dollars by the new district in its first year of operation. . . .' (Emphasis added.)"

*Hodek* at 828.

N.D.C.C. § 57–15–14 referred to in H.B. 1003, provides, with exceptions not shown to apply, a general fund mill levy limitation of "one hundred eighty mills on the dollar of the taxable valuation of the district." Senate Bill 2024 (S.L.1993, ch. 548, § 1), referred to in H.B. 1003, provided in part:

"3. For taxable year 1993, a taxing district may elect to levy at most three percent more than the amount levied in dollars in the base year. For taxable year 1994, a taxing district may elect to levy at most two percent more than the amount levied in dollars in the base year."

In light of the forgoing statutory provisions and amendments, we held:

"By its plain and explicit language, H.B. 1003's amendment of § 15–27.6–10(3), N.D.C.C., was applicable to reorganization proposals becoming effective on July 1, 1993. Thus, no additional vote was necessary to reorganize the five districts voting in favor of reorganization into one district, but the new district had no power to levy taxes in excess of the mill levy limit in H.B. 1003, which incorporated S.B. 2024. The maximum mill levy of 188 mills contained in the revised reorganization proposal exceeded the mill levy limit contained in H.B. 1003 for the first year of the new district's operation."

*Hodek* at 828. We affirmed the judgment "to the extent that it dismissed the plaintiff's claim that an additional vote was necessary;" reversed the judgment "to the extent that it authorized a mill levy of 188 mills, which is higher than the mill levy limit contained in H.B. 1003;" and "remanded for entry of an appropriate judgment in accordance with this opinion." *Hodek* at 829.

On remand, the district court ruled the proper mill levy for the 1993–94 year was 174.83 mills and the excess taxes collected should be refunded or credited to the property owners. Judgment was entered accordingly. Dakota Prairie appealed, contending its 188 mill levy was permissible, or, alternatively, it could appropriately levy 185.4 mills.

The district court had jurisdiction under Art. VI, § 8, N.D. Const., and N.D.C.C. § 27–05–06. This Court has jurisdiction under Art. VI, § 2, N.D. Const., and N.D.C.C. § 28–27–01. The appeal was timely under Rule 4(a), N.D.R.App.P.

II

A number of figures have been suggested as the maximum mill levy limit for Dakota Prairie's first year of operations.

■ The trial court ruled the proper mill levy limit for 1993–94 was 174.83 mills, which was the levy voted on by all seven districts. When only five districts voted to merge, N.D.C.C. § 15–27.6–10(3), as amended by H.B. 1003 in the 1993 legislative session, clearly gave the interim board of the five merging districts authority to "make a determination of tax levy" different than the one in the original proposal. The trial court erred in limiting Dakota Prairie's maximum general fund mill levy to 174.83 mills.

■ Nor does N.D.C.C. § 57–15–14, restrict Dakota Prairie's mill levy limit for 1993–94 to 180 mills because, as a new district, it had no "base year" levy to which three percent could be added under S.B. 2024. N.D.C.C. § 15–27.6–10(3), as amended by H.B. 1003, provides for purposes of applying S.B. 2024, the "amount levied in dollars in the base year is the amount proposed to be levied in dollars by the new district in its first year of operation." Thus, Dakota Prairie's "base year" is the amount of dollars proposed to be levied in its first year, which, because of H.B. 1003, could not exceed the amount of money raised by a 180 mill levy, plus three percent.

Dakota Prairie contends its levy of 188 mills was permissible:

"Section 57–15–14, when read in conjunction with the add-ons permitted over the

years by § 57–15–01, effectively authorized Dakota Prairie to establish a general fund mill levy of 188.75 mills for 1993–94, based upon existing mill levies in its five member districts for 1992–93. Senate Bill 2024 permitted the District to levy an additional three percent, over and above the amount in dollars which would be generated by that 188.75 mill levy. The 188 mills actually levied by the District and approved by the State Board was well within the limit permitted by statute."

When the state board approved the revised restructuring plan with a proposed mill levy of 188 mills in December 1992, there was no mill levy limit applicable to this merger. However, "by the time the new school district came into existence, as of July 1, 1993, it was subject to the mill levy limit of H.B. 1003." *Hodek* at 829. N.D.C.C. § 15–27.6–10(3), as amended by H.B. 1003, deals with a new district without a history, that has never levied taxes before. The statute, as amended, sets a mill levy limitation for a new district created by a merger. There is nothing in N.D.C.C. § 15–27.6–10(3), as amended by H.B. 1003, that authorizes including "add-ons permitted over the years by § 57–15–01" or using existing mill levies by the five districts before they merged. N.D.C.C. § 15–27.6–10(3), as amended by H.B. 1003, sets a mill levy limit without reference to the existing levies of the districts joining to form the new district. The limit is the 180 mill limit of N.D.C.C. § 57–15–14, plus an additional three percent authorized by S.B. 2024, for a total maximum mill levy of 185.4 mills for 1993–94. Thus, Dakota Prairie's levy could not exceed 185.4 mills for its first year of operation. The first year at 185.4 mills would then become the base year for increasing the maximum levy by an additional two percent in the second year of operation.

## III

The judgment is reversed and the matter is remanded for entry of judgment in accordance with this opinion.

VANDE WALLE, C.J., and NEUMANN, LEVINE and MESCHKE, JJ., concur.

VANDE WALLE, Chief Justice, concurring.

I concur in the majority opinion. It simplifies a confusing and conflicting array of legislation introduced into the 1993 Legislature amending section 15–27.6–10(3), NDCC. *See Hodek v. Greater Nelson County Consortium*, 520 N.W.2d 825 (N.D.1994). It is possible for a court to either reconcile legislation or, if unreconcilable, to determine which amendment prevails, as we did in *Hodek*, and to determine the relationship of that amendment to other statutes, as does the majority opinion in this case. However, when the apparent intent of such confusing and contradictory legislation is to trump the previous enactment, I suggest the Legislature clearly indicate which of its enactments is intended to prevail.

A simple statement as to which enactment prevails would save the school district and the objecting patrons money sorely needed for education of students rather than expend it on lawsuits to determine legislative intent. On occasion, unintended confusion will necessarily require legal action to clarify the situation. Here, the number of bills and timing of the bills amending one section of the law raises a question as to whether or not this confusion was an unintended result.

MESCHKE, Justice, concurring.

The 1993 "confusing and conflicting array of legislation" amending NDCC 15–27.6–10 four times, which the majority opinion thoughtfully clarifies, demonstrates again some of the serious problems in our current educational funding system. One pundit has observed waggishly:

> Unfortunately, the present school aid formula is so complicated that understanding it requires more education than we can afford.

Lloyd Omdahl, The Bismarck Tribune, April 9, 1995, at 3C. Unfortunately, the uncertainty, expense, and futility of the trials and appeals in this case are hardly humorous to the children, parents, and taxpayers in this new district.

A majority of this court pointed out in *Bismarck Public School Dist. 1 v. State*, 511

**284**

N.W.2d 247, 252 (N.D.1994): "[A]ll taxes for education purposes, including local property taxes, are State taxes." With that in mind, this new district's experience suggests that "vested" interests in disparate local real estate taxes for schools are stultifying efforts to equalize education funding.

While I agree with Chief Justice Vande-Walle's concurring criticism, I am inclined to phrase the thought more plainly: The number of bills and timing of the bills amending the school taxation law at stake in this case evidences a badly manipulated result unworthy of the legislative power.

While I join in the majority opinion, I make these comments to question the large complacency about the present problematic system of educational funding.

NEUMANN and LEVINE, JJ., concur.